**STEPTOE & JOHNSON LLP**
STEPHANIE A. SHERIDAN, State Bar No. 135910
*ssheridan@steptoe.com*
ANTHONY J. ANSCOMBE, State Bar No. 135883
*aanscombe@steptoe.com*
MEEGAN B. BROOKS, State Bar No. 298570
*mbrooks@steptoe.com*
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: 415.365.6700
Facsimile: 415.365.6699

Attorneys for Defendants
SPARC GROUP LLC (formerly AERO
OPCO LLC); AERO OPERATIONS LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTE LISNER, JENNIFER QUIROZ NUNEZ, and JAMES ANDREWS, for Themselves, as Private Attorneys General, and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AERO OPCO LLC; SPARC GROUP LLC; AERO OPERATIONS LLC; and DOES 1-5, inclusive,<br><br>Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL**<br><br>[Originally Los Angeles County Superior Court Case No. 21STCV20847] |

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO THE CLERK OF THAT COURT:

**PLEASE TAKE NOTICE** that Defendants SPARC Group LLC (formerly Aero OpCo LLC) and Aero Operations LLC (together, "Defendants"), pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby remove the above-captioned action ("Action") from the Superior Court of California, County of Los Angeles to the United States District Court for the Central District of California.

## I.   <u>INTRODUCTION</u>

1.     This Action is properly removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), in that this Action is a civil action in which the alleged amount in controversy exceeds the sum of $5,000,000 exclusive of costs and interest, has more than 100 members in the proposed putative class, and is between citizens of different states.

## II.   <u>BACKGROUND</u>

2.     On June 3, 2020, Plaintiffs Janette Lisner, Jennifer Quiroz Nunez, and James Andrews ("Plaintiffs"), purportedly on behalf of themselves and all others similarly situated, filed a civil action in the Superior Court of California, County of Los Angeles, entitled *Lisner et al. v. Aero OpCo LLC, et al.*, Case No. 21STCV20847 ("Complaint").  (*See* Exhibit A for the Complaint.)  Plaintiffs served this Complaint on June 14, 2021.

3.     The Complaint, styled as a class action, purports to bring claims under: (1) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's False Advertising Law ("FAL"), Cal. Civ. Code §§ 17500, *et seq.*; and (3) California's Unfair Competition Law ("UCL"), Cal. Civ. Code § 17200.  (Complaint ¶ 141-200.)  Plaintiffs allege that Defendants deceive

consumers by falsely advertising sales on merchandise sold in Aeropostale stores in California and on Aeropostale.com.

4.      Plaintiffs purport to bring this action on behalf of a putative class of "[a]ll citizens of the State of California who, within the applicable limitations period, purchased from an Aeropostale store located in California or from the Aeropostale website one or more products which was advertised or promoted by displaying or disseminating a reference price or discount or a 'Buy 1 Get 1 Free' or 'Buy 1 Get 2 Free' offer."  (Complaint ¶ 130.)

5.      Nothing in this Notice of Removal should be interpreted as a concession of liability, the appropriateness of venue, the appropriateness of class treatment, Plaintiffs' class definition, or the validity of Plaintiffs' claims for relief. Defendants reserve the right to supplement and amend this Notice of Removal.

## III.   REQUIREMENTS FOR REMOVAL UNDER CAFA

6.      This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. §§ 1332 and 1453.  Under CAFA, a district court shall have original jurisdiction over any putative civil class action in which: (1) there are at least 100 members in all proposed putative classes; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (3) "any member of a class of Plaintiffs is a citizen of a state different from any defendant."  28 U.S.C. § 1332(d)(2, 5).  Because this action meets each of CAFA's requirements, it may be removed to federal court.  28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant.").

## IV.   THE REQUIREMENTS FOR REMOVAL UNDER CAFA ARE SATISFIED

### A.   The Number of Proposed Class Members Exceeds 100

7.     According to Plaintiffs' Complaint, the putative class "easily comprises tens of thousands of individuals," consisting of all Aeropostale customers in California who have purchased any product at a discount in-store or online in the last four years.  (Complaint ¶¶ 133, 130.)

8.     Thus, the size of the putative class well exceeds 100 members.

### B.   The Amount in Controversy Exceeds $5 Million

9.     Defendants deny Plaintiffs' substantive allegations, the appropriateness of class treatment, and that Plaintiffs are entitled to any of the relief sought in the Complaint, and do not waive any defense with respect to any of Plaintiffs' claims.  Nonetheless, the amount in controversy is determined by accepting Plaintiffs' allegations as true.  *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the Plaintiffs on all claims made in the complaint.").

10.     Case law is clear that "the amount-in-controversy allegation of a defendant seeking federal-court adjudication should be accepted when not contested by the Plaintiffs or questioned by the court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549-50, (2014) (citations omitted); *see also* Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial (2016) § 2:2395, at 2D-30 ("[D]efendant may simply allege in its notice of removal that the jurisdictional threshold has been met and discovery may be taken with regard to that question."); *id*. § 2:3435, at 2D-172 – 173 ("Defendant's notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'").  Further, CAFA's

legislative history indicates that even if the Court "is uncertain about whether all matters in controversy in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case."  Senate Report on the Class Action Fairness Act of 2005 Dates of Consideration and Passage, S. Rep. 109-14.

11.     Plaintiffs purport to seek "disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and unjust enrichment." (Prayer for Relief ¶ B (2).)  They claim that "[i]n 2019, Aeropostale had over $1 billion in sales revenues in 2019 in its brick-and-mortar Aeropostale stores and on its retail website."  (Complaint ¶ 1.)  Given the number of Aeropostale stores in California (57 – *see* Complaint ¶ 13), the volume of sales in each store and online, and the number of potential class members who made purchases at those stores and online, the amount in controversy exceeds $5,000,000.

12.     The attorney's fees and injunctive relief requested by Plaintiffs (Prayer for Relief ¶ B (3), (5)) increase the amount in controversy far above the minimum requirement.  *See also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (noting that the "amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees."); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of 10 the common fund); *Tompkins v. Basic Research LLC*, No. 5-08-244, 2008 WL 71808316, at *4 & n.9 (E.D. Cal. Apr. 22, 2008) (noting that under CAFA, the amount in controversy includes defendants' potential cost of compliance with a request for injunctive relief); *see also* James Wm. Moore et al., Moore's Federal Practice's 102.26(c)(iii) (3d ed. 2010) ("The amount in controversy in CAFA cases may be determined on the basis of the aggregate value to either the Plaintiffs class members or to the defendants").

### C.   **Minimum Diversity Exists**

13.   Diversity exists for purposes of removal under CAFA where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).  "[T]he term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  28 U.S.C. § 1332(d)(1)(D).

14.   Plaintiffs are allegedly residents of California.  (Complaint ¶¶ 7-9.)

15.   The Complaint alleges that Defendants Aero OpCo LLC, SPARC Group LLC, and Aero Operations LLC are each limited liability companies chartered under the laws of the State of Delaware, with their executive operations in New York or New Jersey.  (Complaint ¶¶ 10-12.)  Therefore, under 28 U.S.C. § 1332(d)(10), Defendants are citizens of Delaware, New York, and/or New Jersey.

16.   Ordinarily, for purposes of diversity jurisdiction, an unincorporated association has the citizenships of all of its members.  *See Johnson v. Columbia Props. Anchorage, LP.*, 437 F.3d 894, 899 (9th Cir. 2006).  However, the "exception to this rule is for class actions brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(10)."  *Moss v. Infinity Ins. Co.*, 2015 WL 7351395, at *2 (N.D. Cal. Nov. 20, 2015).  CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.  *See Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes ….").

17.   For purposes of diversity jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).  *See also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("Certain aspects of CAFA, it is true, evidence Congress's intent

that the district courts' jurisdiction vis-a-vis certain kinds of actions be broadened rather than restricted. For example … under § 1332(d)(10), 'an unincorporated association [is] ... deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized,' which departs from the rule that frequently destroys diversity jurisdiction, that 'a limited partnership's [or unincorporated association's] citizenship for diversity purposes can be determined only by reference to all of the entity's members'"); *Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *5 (S.D. Cal. Mar. 30, 2016) ("For CAFA's purposes, [defendant] is a citizen both of the state where it has its principal place of business and the state under whose laws it is organized. *See* 28 U.S.C. § 1332(d)(10).").  To determine the principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).

18.　　The diversity requirement is clearly satisfied here because Plaintiffs are California residents, and, for purposes of CAFA diversity, Defendants are citizens of Delaware, New York, and/or New Jersey.  28 U.S.C. § 1332(d)(2).

### D.　**No CAFA Exceptions Apply**

19.　　The Action does not fall within any of exclusion to removal jurisdiction recognized by 28 U.S.C. § 1332(d), and Plaintiffs have the burden of proving otherwise.  *See Serrano v. 180 Connect, Inc*., 478 F.3d 1018, 1021 (9th Cir. 2007) ("[T]he party seeking remand bears the burden to prove an exception to CAFA's jurisdiction").

## V.　**THE OTHER PROCEDURAL REQUISITES FOR REMOVAL ARE SATISFIED**

20.　　Removal to this judicial district and division is proper under 28 U.S.C. §§ 1441(a), 1446(a), because the Superior Court of the State of California for the County of Los Angeles is located within the Central District of California.

21.     This Notice of Removal is timely because it was filed within thirty days of June 14, 2021, the date on which Plaintiffs served the Complaint. 28 U.S.C. § 1446(b).

22.     Pursuant to 28 U.S.C. § 1446(a), a copy of the Summons, Complaint, and all other documents served on Defendants are attached as Exhibit A.

23.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal and all documents in support thereof and concurrently therewith are being filed with the Clerk of the Superior Court for the County of Los Angeles.  Written notice of the filing of this Notice of Removal is being served upon counsel for Plaintiffs.

**VI.    <u>CONCLUSION</u>**

Defendants respectfully submit that this action is removed properly pursuant to the Class Action Fairness Act.


DATED:  July 14, 2021                    STEPTOE & JOHNSON LLP


                                         By:    _*/s/ Stephanie A. Sheridan*_
                                                Stephanie A. Sheridan
                                                Anthony J. Anscombe
                                                Meegan B. Brooks
                                                Attorneys for Defendants
                                                SPARC GROUP LLC (formerly AERO
                                                OPCO LLC); AERO OPERATIONS LLC

# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729396

TO:     Ron Byers
        SPARC Group, LLC
        125 CHUBB AVE FL 5A
        LYNDHURST, NJ 07071-3504

RE:     **Process Served in California**

FOR:    SPARC GROUP LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JANETTE LISNER, et al., Pltfs. vs. AERO OPCO LLC, et al., Dfts. // To: SPARC GROUP LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 21STCV20847 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/14/2021 at 15:00 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **REMARKS:** | Please note: Transmittal has been edited to correct method of service. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780124474901<br><br>Image SOP<br><br>Email Notification,  Colette Stanford  cstanford@aeropostale.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

| | |
|---|---|
| **Date:** | Mon, Jun 14, 2021 |
| **Server Name:** | Jimmy Lizama |

| | |
|---|---|
| Entity Served | SPARC GROUP LLC |
| Case Number | 21STCV20847 |
| Jurisdiction | CA |

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AERO OPCO LLC; SPARC GROUP LLC; AERO OPERATIONS
LLC; and DOES 1-5, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANETTE LISNER, JENNIFER QUIROZ NUNEZ, and JAMES ANDREWS,
for Themselves, as Private Attorneys General, and On Behalf Of All Others Similarly
Situated,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 03 2021

Sherri R. Carter, Executive Officer/Clerk of Court

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* Los Angeles County Superior Court | *(Número del Caso):* **21ST CV20847** |

111 North Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel M. Hattis, Esq., Hattis & Lukacs; 400 108th Ave NE, Ste 500, Bellevue, WA 98004

| DATE: | Clerk, by | , Deputy |
| *(Fecha):* **JUN 03 2021** Sherri R. Carter, Clerk | *(Secretario)* **STEVEN DREW** | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒☒ on behalf of *(specify):* Geodis Logistics, LLC, a Tennessee corporation

under: ☒☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

RECEIVED
JUN 03 2021
FILING WINDOW

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  Daniel M. Hattis (SBN 232141)
   Paul Karl Lukacs (SBN 197007)
2  **HATTIS & LUKACS**
   400 108th Avenue NE, Suite 500
3  Bellevue, WA 98004
   Telephone: (425) 233-8650
4  Facsimile: (425) 412-7171
   Email: dan@hattislaw.com
5  Email: pkl@hattislaw.com

6  Stephen P. DeNittis, Esq. (Pro Hac Vice to be submitted)
   Shane T. Prince, Esq. (Pro Hac Vice to be submitted)
7  DENITTIS OSEFCHEN PRINCE, P.C.
   5 Greentree Centre, Suite 410
8  525 Route 73 N.
   Marlton, New Jersey 08057
9  Telephone: (856) 797-9951
   Facsimile: (856) 797-9978
10 Email: sdenittis@denittislaw.com
   Email: sprince@denittislaw.com

11

12 *Attorneys for Plaintiffs and the Proposed Class*

13

14            SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                     COUNTY OF LOS ANGELES

16                          UNLIMITED CIVIL

17 JANETTE LISNER,                    Case No. **21 ST CV20847**
   JENNIFER QUIROZ NUNEZ, and
18 JAMES ANDREWS,                     **CLASS ACTION**
   for Themselves, as Private Attorneys
19 General, and On Behalf Of All      **COMPLAINT FOR:**
   Others Similarly Situated,
20                                    1. **Violation of Consumers Legal Remedies**
   Plaintiffs,                           **Act, Cal. Civ. Code § 1750** *et seq.*
21
                                      2. **Violation of False Advertising Law,**
22 v.                                    **Cal. Bus. & Prof. Code § 17500** *et seq.*

23                                    3. **Violation of Unfair Competition Law,**
                                         **Cal. Bus. & Prof. Code § 17200** *et seq.*
24 AERO OPCO LLC;
   SPARC GROUP LLC;
25 AERO OPERATIONS LLC;              **JURY TRIAL DEMANDED**
   and DOES 1–5, inclusive,
26
   Defendants.
27

28

---

CLASS ACTION COMPLAINT

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 03 2021

Sherri R. Carter, Executive Officer/Clerk of Court

BY FAX

1

## **TABLE OF CONTENTS**

2  I.    INTRODUCTION AND SUMMARY ...................................................... - 1 -

3  II.   PARTIES ................................................................................................. - 2 -

4  III.  JURISDICTION AND VENUE ............................................................. - 5 -

    IV.  FACTUAL ALLEGATIONS OF AEROPOSTALE'S FALSE DISCOUNT
5        ADVERTISING SCHEME ...................................................................... - 6 -

6        A.   Aeropostale's False Reference Prices ......................................... - 9 -

7        B.   Aeropostale's False "Free" Offers. ........................................... - 13 -

    V.   PLAINTIFFS' COMPREHENSIVE INVESTIGATION .......................... - 16 -
8
         A.   Plaintiffs' Allegations Are Based On A Sweeping Six-Year
9             Investigation By Plaintiffs' Counsel. ....................................... - 16 -

10  VI.  CUSTOMERS WERE HARMED AS A RESULT OF AEROPOSTALE'S
         FALSE DISCOUNT ADVERTISING SCHEME ..................................... - 21 -

11  VII. PLAINTIFFS' FACTUAL ALLEGATIONS ............................................ - 22 -

12       A.   Plaintiff Janette Lisner ............................................................. - 22 -

13       B.   Plaintiff Jennifer Quiroz Nunez ............................................... - 25 -

         C.   Plaintiff James Andrews ........................................................... - 27 -
14
    VIII. CLASS ACTION ALLEGATIONS ......................................................... - 30 -
15
    CAUSES OF ACTION .................................................................................... - 32 -
16
         COUNT I: Violation of the Consumers Legal Remedies Act
17       California Civil Code § 1750 et seq. ................................................. - 32 -

18       COUNT II: Violation of California's False Advertising Law
         California Business and Professions Code § 17500 et seq. .................. - 35 -

19       COUNT III: Violation of California's Unfair Competition Law
         California Business and Professions Code § 17200 et seq. .................. - 37 -

20  PRAYER FOR RELIEF ................................................................................... - 40 -

    JURY DEMAND ............................................................................................ - 41 -
21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1          Plaintiffs Janette Lisner, Jennifer Quiroz Nunez and James Andrews, for themselves, as

2    private attorneys general on behalf of the general public, and on behalf of all others similarly

3    situated, allege as follows, on personal knowledge and on the investigation of their counsel,

4    against Defendants Aero OpCo LLC, SPARC Group LLC, and Aero Operations, LLC;

5    (collectively "Defendants" or "Aeropostale"); and Defendants Does 1–5, inclusive:

6    **I.      INTRODUCTION AND SUMMARY**

7          1.      Aeropostale is a designer, marketer, and retail seller of casual clothing and

8    accessories, targeting primarily the teen and young adult market. Almost all the items offered

9    for sale by Aeropostale in its Aeropostale stores are branded as "Aeropostale" products, and are

10   offered and sold exclusively by Aeropostale. In 2019, Aeropostale had over $1 billion in sales

11   revenues in 2019 in its brick-and-mortar Aeropostale stores and on its retail website.

12         2.      For years, Aeropostale has perpetrated a massive false discount advertising

13   scheme across nearly all of its Aeropostale-branded products and sales channels (i.e., in

14   Aeropostale's brick-and-mortar retail stores and on the Aeropostale website). Specifically,

15   Aeropostale advertises perpetual or near perpetual storewide "sales" and percentage-off

16   discounts—typically 50% to 70% off—from Aeropostale's self-created list prices for its

17   products. Aeropostale represents its list prices, which are printed on price tags attached to the

18   items it sells and are advertised on its website with a slash-through, to be the "regular" and

19   normal selling prices of the items. The list prices function as reference prices from which the

20   advertised sales discounts are calculated.  Aeropostale also advertises "free" offers such as

21   "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free," where Aeropostale represents that it will include

22   one or two more of a given item (or of a specified similar item) for "free" if the customer pays

23   the list price for the item.

24         3.      Aeropostale's purported discounts and reference prices are false because

25   Aeropostale never or rarely offers or sells its products at the advertised list price. Rather,

26   Aeropostale invents inflated and fictitious list prices in order to enable it to advertise perpetual

27   discounts and store-wide "sale" events to induce customers to purchase its products.

28   Aeropostale's purported "free" offers are likewise false because Aeropostale directly recovers

CLASS ACTION COMPLAINT

- 1 -

1    the cost of the "free" items by first doubling or tripling the item selling price to the inflated—
2    and otherwise never charged—list price.

3        **4.**      Aeropostale's marketing plan is to trick its customers into believing that the list
4    price printed on its product tags and on its product webpages is the regular and normal price for
5    its products, and that its products are worth this inflated list price, such that the lower
6    advertised sale price represents a special bargain.

7        **5.**      Aeropostale's nationwide fraudulent advertising scheme harmed consumers like
8    Plaintiffs Janette Lisner, Jennifer Quiroz Nunez, and James Andrews, who each purchased
9    falsely discounted products in a California Aeropostale retail store or from the Aeropostale
10   website. Customers were harmed because they would not have purchased the items at the prices
11   they paid had they known the items had not been regularly offered at the higher list price.
12   Customers did not enjoy the actual discounts Aeropostale represented and promised to them,
13   and the items they purchased were not in fact worth the inflated amount that Aeropostale
14   represented to them. Customers were also harmed because Aeropostale's false advertising
15   scheme fraudulently increased demand for Aeropostale's products, thereby shifting the demand
16   curve and enabling Defendants to charge more than they otherwise could have charged for their
17   products.

18       **6.**      Consequently, each Plaintiff brings this action on her or his own behalf as a
19   deceived Aeropostale customer; as a private attorney general seeking the imposition of public
20   injunctive relief against Defendants; and as a representative plaintiff on behalf of a class of
21   California consumers seeking, among other things, that Defendants be ordered to disgorge all
22   revenues they have unjustly received from the proposed Class due to Defendants' intentional
23   and unlawful pattern and practice as described herein of using false reference prices, false
24   discounts, and false "free" offers.

25   **II.**    **PARTIES**

26       **7.**      Plaintiff Janette Lisner is a citizen of the United States of America and
27   California and an individual and a natural adult person who resides in Los Angeles County,
28   California.

CLASS ACTION COMPLAINT

- 2 -

1    **8.**    Plaintiff Jennifer Quiroz Nunez is a citizen of the United States of America and

2    California and an individual and a natural adult person who resides in Tulare County,

3    California.

4    **9.**    Plaintiff James Andrews is a citizen of the United States of America and

5    California and an individual and a natural adult person who resides in Riverside County,

6    California.

7    **10.**    Defendant Aero OpCo LLC is a limited liability company chartered under the

8    laws of the State of Delaware. Aero OpCo LLC currently has and at all relevant times had its

9    executive, marketing and technology operations in the states of New Jersey and New York.

10   Based on Plaintiffs' investigation, Aero OpCo LLC manages and/or managed the retail and

11   website operations of the Aeropostale brand and has conducted the unlawful actions described

12   herein. According to the Aeropostale website, Defendant Aero OpCo LLC is responsible for

13   operating the retail website at www.aeropostale.com.[1] On September 15, 2016, Aero OpCo

14   LLC filed an application to register as a foreign LLC with the California Secretary of State

15   which listed the Aero OpCo LLC business address as 112 W 34th Street, Floor 22, New York,

16   New York 10120.  On September 11, 2019, Aero OpCo LLC filed a Statement of Information

17   with the California Secretary of State which listed the Aero Opco LLC business address as 125

18   Chubb Avenue, 5th Floor, Lyndhurst, New Jersey 07071. On February 25, 2020, Aero OpCo

19   LLC filed with the California Secretary of State a Name Change Amendment in which it stated

20   that Aero OpCo LLC had changed its name to SPARC Group LLC.

21   **11.**    Defendant SPARC Group LLC ("SPARC") is a limited liability company

22   chartered under the laws of the State of Delaware. Based on Plaintiffs' investigation, SPARC

23   Group LLC manages the retail and website operations of the Aeropostale brand and has

24   conducted the unlawful actions described herein. SPARC describes itself as the "Operating

25   Company for leading global brands including Aeropostale, Brooks Brothers, Forever 21, Lucky

26

---

27   [1] See Aeropostale Terms & Conditions at https://www.aeropostale.com/terms-of-service.html,
     which states: "Aeropostale.com is operated by Aero OpCo LLC ("Aero") on behalf of itself
28   and its affiliates (the "Web Site").

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    Brand and Nautica."[2] SPARK Group LLC is a joint venture between Simon Property Group,

2    L.P. and Authentic Brands Group LLC. SPARC currently has and at all relevant times had its

3    executive, marketing and technology operations in the states of New Jersey and New York.

4    Marc Miller, the CEO of SPARC Group LLC, currently lists his location on his LinkedIn

5    profile as "New York City Metropolitan Area."[3] The SPARC Group LLC official company

6    webpage on LinkedIn lists its location as "New York, NY."[4]

7        12.    Defendant Aero Operations LLC is a limited liability company chartered under

8    the laws of the State of Delaware. Aero Operations LLC currently has and at all relevant times

9    in the past has had its executive operations in New York, New York or Lyndhurst, New Jersey.

10   Based on Plaintiffs' investigation, Aero Operations LLC is involved in the operations of the

11   Aeropostale brand and has materially assisted the other defendants in conducting the unlawful

12   actions described herein. On September 15, 2016, Aero Operations LLC filed an application to

13   register as a foreign LLC with the California Secretary of State which listed the Aero

14   Operations LLC business address as 112 W 34th Street, Floor 22, New York, New York 10120.

15   On September 11, 2019, Aero Operations LLC filed a Statement of Information with the

16   California Secretary of State which listed the Aero Operations LLC business address as 125

17   Chubb Avenue, 5th Floor, Lyndhurst, New Jersey 07071. The Statement of Information listed

18   the type of business as "real estate investment." The Statement of Information lists Marc D.

19   Miller as the CEO of Aero Operations; Mr. Miller is also listed as the CEO of Aero Opco LLC

20   and of SPARC Group LLC in filings with the California Secretary of State.

21       13.    Defendants Aero OpCo LLC, SPARC Group LLC, and Aero Operations LLC

22   (collectively, "Defendants" or "Aeropostale"), own and/or operate approximately 500 brick-

23   and-mortar Aeropostale retail stores throughout the United States, including 57 in California.

24

_____

25   [2] See SPARC Group company LinkedIn webpage at:
     https://www.linkedin.com/company/sparc-group-llc/ (last accessed April 19, 2021).

26
     [3] See Marc Miller's LinkedIn profile webpage at https://www.linkedin.com/in/marc-miller-
27   ba10821/ (last accessed April 19, 2021).

     [4] See SPARC Group company LinkedIn webpage at:
28   https://www.linkedin.com/company/sparc-group-llc/ (last accessed April 19, 2021).

1    Defendants also own and/or operate a retail website www.aeropostale.com, through which

2    Defendants advertise and sell their goods, with said website being regularly seen and used by

3    consumers in California and throughout the United States to purchase goods from Aeropostale.

4        14.    Defendants also operate distribution centers in Ontario, California and South

5    River, New Jersey.

6        15.    Defendants Doe 1 through Doe 5, inclusive, aided and/or abetted Defendants

7    Aero OpCo LLC, SPARC Group LLC, and/or Aero Operations LLC, in such a manner that

8    Doe 1 through Doe 5, inclusive, are each directly, contributorily, vicariously, derivatively

9    and/or otherwise liable for the acts or omissions of Aeropostale pled herein. Plaintiffs are

10   currently unaware of the true identities of Doe 1 through Doe 5, inclusive; upon learning the

11   true identities of Doe 1 through Doe 5, inclusive, Plaintiffs anticipate either freely amending

12   the operative complaint or requesting leave from the Court to amend the operative complaint.

13       16.    The allegations of this Complaint only concern Aeropostale's actions since

14   September 16, 2016, during which time Defendants have owned and/or operated the

15   Aeropostale business.

16   **III.    JURISDICTION AND VENUE**

17       17.    **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over

18   this civil action pursuant to, among other bases, Section 10 of Article VI of the California

19   Constitution.

20       18.    **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants

21   pursuant to, among other bases, California Code of Civil Procedure Section 410.10 because: (1)

22   Defendants are authorized to do business and regularly conduct business in California; (2) the

23   claims alleged herein took place in California; and (3) Defendants have committed tortious acts

24   within the State of California (as alleged, without limitation, throughout this Complaint).

25       19.    Defendants own and/or operate approximately 57 brick-and-mortar Aeropostale

26   retail stores in California and operate a distribution center in Ontario, California. Defendants

27   also operate the Aeropostale website, through which Aeropostale advertises and sells its goods

28   to individuals throughout California.

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1      20.    **Venue**. Venue is proper in Los Angeles County because, without limitation, the

2   County of Los Angeles is the county in which at least one of the transactions which is the

3   subject of this Complaint occurred.

## IV.    FACTUAL ALLEGATIONS OF AEROPOSTALE'S FALSE DISCOUNT ADVERTISING SCHEME

6      21.    Aeropostale currently operates approximately 500 brick-and-mortar Aeropostale

7   retail stores throughout the United States, including 57 in California.

8      22.    Aeropostale also operates a retail website at www.aeropostale.com, through

9   which Aeropostale advertises and sells its goods, which is regularly seen and used to purchase

10  goods from Aeropostale by consumers throughout the United States, including in California.

11     23.    Almost all the items offered by Aeropostale are branded as "Aeropostale"

12  products and are exclusively offered for sale and sold by Aeropostale in its retail stores and on

13  its website. In other words, the products offered by Aeropostale in its stores are not offered or

14  sold by, and are not available from, any other retailer.

15     24.    Aeropostale had over $1 billion in sales revenues in 2019 in its brick-and-mortar

16  Aeropostale stores and on its retail website.

17     25.    In significant part, however, Aeropostale's revenues have been the product of a

18  massive false discount advertising scheme. Aeropostale perpetually advertises nearly all of its

19  products with significant discounts of 50-70% from a false reference price, in order to trick its

20  customers into believing the advertised "sale" price represents a special bargain from

21  Aeropostale's usual and regular prices. In fact, unbeknownst to its customers, Aeropostale's

22  discounts are never-ending, and its products are never or virtually never offered at the supposed

23  regular price. Aeropostale perpetrates this illegal scheme in order to induce consumers to

24  purchase its products and to increase the amount it can charge for its products.

25     26.    Decades of academic research has established that the use of reference prices,

26  such as those utilized by Aeropostale, materially impacts consumers' behavior. A reference

27  price affects a consumer's perception of the value of the transaction, the consumer's

28  willingness to make the purchase, and the amount of money the consumer is willing to pay for

- 6 -

1  the product.[5]

2      **27.** When a reference price is bona fide and truthful, it may help consumers in

3  making informed purchasing decisions. In contrast, consumers are harmed when retailers, such

4  as Aeropostale, advertise their products with inflated false reference prices. The false reference

5  prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the

6  offer, and result in purchasing decisions based on false pretenses.

7      **28.** False reference pricing such as that employed by Aeropostale causes consumers

8  to pay more than they otherwise would have paid for products. False reference pricing also

9  fraudulently increases consumer demand for products, shifting the demand curve and enabling

10  retailers to charge higher prices—to everyone—than they otherwise could have charged.

11      **29.** Beyond the adverse impact upon consumers' welfare, the practice of employing

12  false reference pricing also negatively affects the integrity of competition in retail markets. A

13  retailer's use of false reference prices constitutes an unfair method of competition, injuring

14  honest competitors that sell the same or similar products, or otherwise compete in the same

15  market, using valid and accurate reference prices. Businesses who play by the rules—and the

16  investors in those businesses—are penalized if the unlawful advertising practices of their

17  competitors go unchecked.

18      **30.** California law, as well as federal regulations, prohibit false reference pricing

19  ————————————

20  [5] See, *e.g.*, Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

1   practices such as those perpetrated by Aeropostale. California's Unfair Competition Law and

2   False Advertising Law generally forbid unfair business practices and false advertising (i.e., Cal.

3   Bus. and Prof. Code §§ 17200 *et seq.* and 17500 *et seq.*). Regarding sales to consumers for

4   household purposes, the California Consumers Legal Remedies Act prohibits "[m]aking false

5   or misleading statements of fact concerning reasons for, existence of, or amounts of, price

6   reductions." Cal. Civ. Code § 1770(a)(13).

7       31.   The United States Court of Appeals for the Ninth Circuit has recognized the

8   abuses that flow from false reference pricing practices: "Most consumers have, at some point,

9   purchased merchandise that was marketed as being 'on sale' because the proffered discount

10  seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain,

11  therefore have an incentive to lie to their customers by falsely claiming that their products have

12  previously sold at a far higher 'original' price in order to induce customers to purchase

13  merchandise at a purportedly marked-down 'sale' price. Because such practices are

14  misleading—and effective—the California legislature has prohibited them." *Hinojos v. Kohl's*

15  *Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

16      32.   The California Court of Appeal has likewise recognized the importance of

17  California's false reference price advertising statutes in protecting consumers: "Our Legislature

18  has adopted multiple statutes that specifically prohibit the use of deceptive former price

19  information and misleading statements regarding the amount of a price reduction. … These

20  statutes make clear that … our Legislature has concluded 'reasonable people can and do attach

21  importance to [a product's former price] in their purchasing decisions.' (alterations in original)

22  (quoting Kwikset Corp. v. Superior Court, 246 P.3d 877, 892 (Cal. 2011))." *Hansen v.*

23  *Newegg.com Americas, Inc.*, 25 Cal.App.5th 714, 730 (2018).

24

25

26

27

28

CLASS ACTION COMPLAINT                          - 8 -

1    33.    The Federal Trade Commission ("FTC") has also described what constitutes

2    false reference pricing practices:

> (a) One of the most commonly used forms of bargain advertising is to
> offer a reduction from the advertiser's own former price for an article.
> If the former price is the actual, bona fide price at which the article was
> offered to the public on a regular basis for a reasonably substantial
> period of time, it provides a legitimate basis for the advertising of a price
> comparison. Where the former price is genuine, the bargain being
> advertised is a true one. If, on the other hand, the former price being
> advertised is not bona fide but fictitious -- for example, where an
> artificial, inflated price was established for the purpose of enabling the
> subsequent offer of a large reduction -- the "bargain" being advertised
> is a false one; the purchaser is not receiving the unusual value he
> expects. In such cases, the "reduced price" is, in reality, probably just
> the seller's regular price.

10    16 C.F.R § 233.1.

11    34.    Aeropostale's false discounting scheme is similar in all material respects to the

12    deceptive practices described and prohibited by these false reference pricing laws and

13    regulations.

14    **A.    <u>Aeropostale's False Reference Prices</u>**

15    35.    Aeropostale intentionally and deceptively indicates to consumers that the

16    advertised "sale" prices in its retail stores represent significant discounts from Aeropostale's

17    own regular and normal prices for its products. Aeropostale's regular practice is to post large

18    signs throughout its retail stores advertising that virtually all of its products are "XX% OFF"

19    (typically 50-70% off). These signs are typically pre-printed, but Aeropostale also posts hand-

20    written signs on black chalkboard in its stores to further give the appearance of a special

21    limited-time sale. But in fact, the percentage-off savings and discounts are perpetual, and are

22    calculated based on the inflated and fictitious reference price listed on the product tags.

23

24

25

26

27

28

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

36.     Below are photographs taken at an Aeropostale store on July 7, 2019, which are representative of Aeropostale's in-store advertising at any given time:

### Percentage-Off Discount Advertising



HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

1    37.    In this example, Aeropostale advertises an "ENTIRE STORE 50-70% OFF"

2    sales event. The promised discounts are advertised on large signs both outside and inside the

3    store. Signage on the racks adjacent to the clothing items prominently advertises "50% OFF,"

4    "60% OFF" and "70% OFF" in bold lettering.  Aeropostale has also placed hand-written

5    chalkboard signs in the store which advertise discounts such as "50% OFF" and "70% OFF."

6    38.    But in fact, Aeropostale perpetually advertises these 50-70% storewide savings

7    whether it is in the middle of summer, whether it is Black Friday, or whether it is in the middle

8    of April.

9    39.    For example, on April 23, 2021, Aeropostale advertised on its website a similar

10   "50-70% OFF ENTIRE SITE" sale. See the screenshot below:

11              **Homepage of Aeropostale Website April 23, 2021**



18   40.    Advertised discounts such as these are viewed both under the law and by the

19   reasonable consumer to refer to discounts from Aeropostale's own regular sales prices for those

20   products. *See* 16 C.F.R § 233.1; *see also* 4 Cal. Code Reg. § 1301.

21

22

23

24

25

26

27

28

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1       **41.**     There can be no doubt that Aeropostale intends that consumers interpret and

2    understand the list prices printed on its product tags and on its website to stand for

3    Aeropostale's regular selling prices for those products. In fact, for years on its product

4    webpages on the Aeropostale website, Aeropostale has prominently advertised that the savings

5    are from Aeropostale's "REGULAR PRICE."  See the screenshot below:

6

### Aeropostale Product Webpage August 20, 2020



15       **42.**     This screenshot is of the product webpage for the Long Sleeve Seriously Soft

16    Crew Tee ("Crew Tee") taken from the Aeropostale website on August 20, 2020. Aeropostale

17    features a prominent red box with the phrase "SAVE **59%** OFF THE REGULAR PRICE."

18    The 59% savings was calculated based on the represented "regular" slash-through list price of

19    $29.50.  Further, for maximum impact, Aeropostale designed this red box (containing the false

20    advertising "SAVE **59%** OFF THE REGULAR PRICE") as an animation on its product

21    webpages which suddenly flies in from the right side of the screen and bounces up against the

22    strike-through list price.

23       **43.**     The advertised savings was false. Since November 1, 2019, Aeropostale had

24    <u>never</u> charged more than the $12.00 selling price for the Crew Tee. Notably, based on counsel's

25    investigation, from November 26, 2019 through August 19, 2020 Aeropostale charged $7.00

26    for the Crew Tee ($5.00 less than the supposed $12.00 "sale" price). Thus, customers who

27    purchased the falsely discounted Crew Tee on August 20, 2020 had been tricked by

28    Aeropostale into paying $5.00 <u>more</u> than the true "regular price" of the Crew Tee.

1       **44.**     Aeropostale's false discount advertisements and sales events are intended by

2    Aeropostale to trick its customers into believing that its products have a value of, and are

3    usually sold at, the list prices printed on the product tags and on the product webpages, and that

4    the purported "sale" prices and advertised discounts represent a special and limited-time

5    bargain.

6       **45.**     In fact, the price and discount representations on the signage and the list prices

7    on the product price tags are false and misleading, because customers are not receiving the

8    special bargain that Aeropostale has led them to believe. The specific amounts of the

9    percentage-off or dollar discount may slightly change over time, but the existence of a

10    significant discount on each product is perpetual.

11       **B.**    **Aeropostale's False "Free" Offers.**

12       **46.**     Another related discount practice by Aeropostale is to advertise "Buy 1 Get 1

13    Free" or "Buy 1 Get 2 Free" offers for its products.

14       **47.**     However, in all cases, Aeropostale's promise of "Buy 1 Get 1 Free" or "Buy 1

15    Get 2 Free" is false and deceptive. Whenever Aeropostale makes such a purported "Free" offer,

16    Aeropostale first inflates the selling price of the product to the (never otherwise charged) price

17    listed on the tag. Given Aeropostale's perpetual "discount" pricing of 50-70% off the list price,

18    this means Aeropostale is directly recovering the cost of the "free" product(s) by doubling or

19    tripling the price of the first product, such that the customer is in fact not getting any deal at all.

20

21

22

23

24

25

26

27

28

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    48.    For example, below are two screenshots from the Aeropostale website

2  demonstrating Aeropostale's false free offer scheme.

3

### Aeropostale Website January 13, 2021
### Advertised With a 50% Discount from an Inflated Reference Price



### Aeropostale Website January 14, 2021
### Advertised With False "BUY 1 GET 1 FREE" Offer (Selling Price is Exactly Doubled)



20    49.    This item, the Max Stretch Air Athletic Skinny Jean, was always either offered

21  by Aeropostale for sale at $27.48 or less, or at the $54.95 price with a "Buy 1 Get 1 Free" offer.

22  Note that $27.48 is exactly 50% of $54.95. In other words, on January 14, 2021, (see the

23  screenshot above) Aeropostale formulaically doubled the selling price in order to offer its

24  supposed "Buy 1 Get 1 Free" offer.

25

26

27

28

CLASS ACTION COMPLAINT                              - 14 -

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

50.     Aeropostale similarly advertises "Buy 1 Get 1 Free" and "Buy 1 Get 2 Free" offers in its retail stores. For example, below are photographs taken at an Aeropostale retail store on July 7, 2019, showing "Buy 1 Get 1 Free" and "Buy 1 Get 2 Free" advertising.

**"Buy 1 Get 1 Free" and "Buy 1 Get 2 Free" Advertising**






HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

51.     The Federal Trade Commission warns sellers advertising "Free" offers that "Where the seller, in making such an offer, increases his regular price of the article required to be bought, or decreases the quantity and quality of that article, or otherwise attaches strings (other than the basic condition that the article be purchased in order for the purchaser to be entitled to the 'free' or '1¢' additional merchandise) to the offer, the consumer may be deceived." 16 C.F.R § 233.4. "In other words, when the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other. *Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased . . .*" 16 C.F.R. § 251.1 (emphasis added).

52.     Aeropostale engages in exactly this deceptive and unlawful practice when it recovers the cost of the supposedly "free" product(s) by doubling or tripling the price of the first product. Aeropostale's "free" offer representations are false, and the customer is not in fact getting the bargain that Aeropostale is advertising.

53.     Meanwhile, these "BUY 1 GET 1 FREE" or "BUY 1 GET 2 FREE" offer days, on which Aeropostale increases the price of the first product to the list price, do not constitute bona fide offers to sell the product at the list price because the product is only offered at the list price when accompanied by a supposedly "FREE" offer. Thus, Aeropostale cannot credibly claim to "establish" its list prices via this deceptive free offer scheme, which is itself an independent unlawful act and practice.

## V.     PLAINTIFFS' COMPREHENSIVE INVESTIGATION

### A.     Plaintiffs' Allegations Are Based On A Sweeping Six-Year Investigation By Plaintiffs' Counsel.

54.     Plaintiffs' allegations concerning Aeropostale's false discount advertising scheme are based on a comprehensive investigation by Plaintiffs' counsel of Aeropostale's pricing practices for a period of over six years. Plaintiffs' counsel has been monitoring and scraping the Aeropostale website on an automated daily basis with a proprietary software

CLASS ACTION COMPLAINT

- 16 -

1    program since November 5, 2014. Plaintiffs' counsel has compiled and extracted daily pricing

2    and marketing data from the website for nearly all of the products Aeropostale has offered

3    during this time. In total, Plaintiffs' counsel has assembled and analyzed a comprehensive

4    historical database of daily prices and time-stamped screenshots of over 3.6 million daily

5    offerings for over 32 thousand products over this more than six-year period. (Note, while

6    counsel has been investigating the Aeropostale business since November 5, 2014, the

7    allegations of this Complaint only concern Aeropostale's actions since September 16, 2016,

8    during which time Defendants have owned and/or operated the Aeropostale business.)

9         55.     Plaintiffs' counsel has also investigated brick-and-mortar Aeropostale retail

10   stores and has found that Aeropostale's false discount practices and product pricing are

11   substantially the same both online and in-store. Virtually all products that Aeropostale offers in

12   its brick-and-mortar retail stores are also available and are advertised on the Aeropostale

13   website. Based on the investigation of Plaintiffs' counsel, Aeropostale offers and advertises

14   these products with identical list prices and at substantially the same sale prices both on the

15   Aeropostale website and in its brick-and-mortar stores in California and throughout the nation.

16   Thus, Plaintiffs' counsel's comprehensive evidence, statistics, and analysis which establishes

17   the falsity of Aeropostale's discount advertising online, is equally applicable to establishing the

18   falsity of Aeropostale's discount advertising in its brick-and-mortar retail stores.

19

20

21

22

23

24

25

26

27

28

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

56.     For example, the images below demonstrate how Aeropostale's list prices, sales prices, and advertised purported discounts are substantially the same both online and in-store:

**Aeropostale Retail Store**             **Aeropostale Website**





57.     The images above are of the Aeropostale Long Sleeve Seriously Soft Crew Tee ("Crew Tee"). The photographs on the left were taken at an Aeropostale retail store on November 26, 2019. The screenshot on the right was taken the same day on Aeropostale's website of the identical Crew Tee. The top photographs on the left show the $7.87 sale price and the $29.50 list price printed on the item tag. On the website, Aeropostale advertised the same $29.50 list price (here represented with a strike-through indicating it is the higher regular price), alongside the same $7.87 sale price.

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1      58.     The images below further demonstrate how Aeropostale's list prices, sales

2  prices, and advertised purported discounts are substantially the same both online and in-store:

3  **Aeropostale Retail Store**                    **Aeropostale Website**




20      59.     The images above are of the Aeropostale A87 Solid Logo Pique Polo ("Solid

21  Polo"). The photographs on the left were taken at an Aeropostale retail store on July 7, 2019.

22  The screenshot on the right was taken the same day on Aeropostale's website of the identical

23  Solid Polo. The photographs on the left show the $10.00 sale price and the $29.50 list price

24  printed on the item tag. On the website, Aeropostale advertised the same $29.50 list price (here

25  represented with a strike-through indicating it is the higher regular price), alongside the same

26  $10.00 sale price.

27      60.     Plaintiffs' counsel's exhaustive big-data analysis of millions of data points over

28  a six-year period for more than 32,000 products shows that Aeropostale advertises perpetual

CLASS ACTION COMPLAINT

- 19 -

1    discounts for nearly all of its products. The percentage-off and other discounts are <u>always</u> false,

2    and Aeropostale's list prices (i.e., reference prices) from which the discounts are calculated are

3    false and inflated. In fact, for most of the products that Aeropostale advertises with a discount

4    or with a "Free" offer, Aeropostale has *never*—not even for a single day—offered the product

5    at the list price in its stores without a discount or "free" offer.

6        61.    On information and belief, on those rare occasions that Aeropostale offers some

7    of its products at list price, it does so in bad faith, solely for the purpose of "establishing" its list

8    price to attempt to exculpate itself from legal liability for its illegal pricing scheme. It is

9    Aeropostale's intent to sell few if any products at list price, and in fact Aeropostale sells no, or

10   practically no, products at list price.

11       62.    Also based on investigation by Plaintiffs' counsel, brick-and-mortar Aeropostale

12   mainline stores and Aeropostale "Factory" stores are substantially identical and are for all

13   intents and purposes the same. The mainline and factory stores typically advertise the same

14   store-wide "sale" events, and consistently offer identical products with identical list prices at

15   substantially the same sales prices. In addition, the Aeropostale mainline stores and the

16   Aeropostale Factory stores have substantially the same physical layout and offer substantially

17   the same customer experience.

18       63.    Counsel's comprehensive investigation has revealed that the Aeropostale

19   business has been perpetrating this massive false discount advertising scheme online and in

20   Aeropostale retail stores (including throughout California) since at least November 5, 2014,

21   through to the present day. (However, the allegations of this Complaint only concern

22   Aeropostale's actions since September 16, 2016, during which time Defendants have owned

23   and/or operated the Aeropostale business.)

24       64.    The false or misleading nature of Aeropostale's reference prices and purported

25   discounts were at all relevant times masked or concealed or hidden such that an ordinary

26   consumer exercising reasonable care under all the circumstances would not have known of or

27   discovered their false or misleading nature.

28       65.    By Aeropostale's design, the false advertising scheme by its very nature is

CLASS ACTION COMPLAINT

- 20 -

1   hidden and impossible for the typical consumer to discover. Consumers who shopped at

2   Aeropostale retail stores or on the Aeropostale website would have no way to know the true

3   daily price histories and past selling prices for the products they viewed and purchased.

4   Consumers would have no way to know that the list prices printed on the product tags and on

5   the product webpages were fictitious and inflated and that the advertised savings were false.

6   Consumers would have no way to know that Aeropostale's false discounting practices extended

7   across all of Aeropostale's products and stores and sales channels.

8        66.    In fact, counsel for Plaintiffs only found evidence for Aeropostale's advertising

9   scheme as part of an expensive and expansive 6-year investigation of Aeropostale's pricing

10   practices in general.

11       67.    Aeropostale continues to advertise false reference prices, false discounts, and

12   false free offers in its California stores and on its website (and in its stores nationwide) to this

13  . day. There is no reason to believe that Aeropostale will voluntarily and permanently cease its

14   unlawful practices. Moreover, in the unlikely event that Aeropostale were to cease its unlawful

15   practices, Aeropostale can and is likely to recommence these unlawful practices.

16       68.    In acting toward consumers and the general public in the manner alleged herein,

17   Aeropostale acted with and was guilty of malice, fraud, and oppression and acted in a manner

18   with a strong and negative impact upon Plaintiffs, the Class, and the public.

19   **VI.   CUSTOMERS WERE HARMED AS A RESULT OF AEROPOSTALE'S FALSE**
20   **       DISCOUNT ADVERTISING SCHEME**

21       69.    As a direct and proximate result of Aeropostale's false discount advertising

22   scheme and the acts and omissions described herein, all California consumers who have

23   purchased a product in a California Aeropostale retail store or from the Aeropostale website

24   that was advertised with a reference price, discount, or "free" offer have been harmed, have

25   suffered an injury-in-fact, and have lost money or property.

26       70.    **First**, customers were harmed because they would not have purchased the items

27   at the prices they paid had they known the items had not been regularly offered at the higher list

28   price. Customers paid more than they otherwise would have paid for the products they

CLASS ACTION COMPLAINT

- 21 -

1    purchased.

2        71.    **Second**, customers were harmed because they did not enjoy the actual discounts

3    Aeropostale represented and promised to them.

4        72.    **Third**, customers were harmed because the items they purchased were not in

5    fact worth the inflated amount that Aeropostale represented to them. In fact, the items did not

6    normally sell for, and were not actually worth, the fictitious and invented list price that

7    Aeropostale printed on its price tags and on its website.

8        73.    **Fourth**, customers were harmed because they were victims of Aeropostale's

9    fraud on the market. Aeropostale's false advertising scheme fraudulently increased demand for

10   Aeropostale's products, thereby shifting the demand curve and enabling Defendants to charge

11   their customers more than they otherwise could have charged. Aeropostale's fraud on the

12   market enabled Aeropostale to charge everyone more for all of its products, by artificially

13   stimulating demand based on false pretenses and fraud. But for the false advertising scheme,

14   Aeropostale would have had to charge less money for its products in order to enjoy the same

15   level of demand for its products.

16   **VII.    PLAINTIFFS' FACTUAL ALLEGATIONS**

17       **A.    Plaintiff Janette Lisner**

18       74.    Plaintiff Janette Lisner is, and at all relevant times has been, a California

19   resident and citizen.

20       75.    Ms. Lisner has been a regular shopper at Aeropostale for many years.

21       76.    **In-Store Purchase of Women's Cami**.  Ms. Lisner has made numerous

22   purchases of purportedly discounted products in Aeropostale's brick-and-mortar stores in

23   California.

24       77.    For example, on June 22, 2020, Ms. Lisner visited an Aeropostale store located

25   in the Northridge Fashion Center in Northridge, California 91324.

26       78.    While at the store, Ms. Lisner saw prominent signs that advertised significant

27   sales and percentage-off discounts on merchandise throughout the store.

28       79.    Ms. Lisner viewed a women's basic camisole ("Cami") that had a price tag

CLASS ACTION COMPLAINT

- 22 -

1 showing a price of $6.50 and which Aeropostale advertised as being on sale for $4.00.

2   80. Relying on Aeropostale's representations, Ms. Lisner reasonably believed that

3 the Cami was normally offered for sale and sold by Aeropostale for the $6.50 tagged price.

4 Ms. Lisner reasonably believed that the Cami was thereby worth and had a value of $6.50, the

5 price set forth on the price tag by Aeropostale. Ms. Lisner reasonably believed that the

6 advertised "sale" price of $4.00—a purported monetary discount of $2.50—represented a

7 special bargain.

8   81. Relying on Aeropostale's representations, Ms. Lisner purchased five Camis

9 (three in one color, Item #96627506, one in another color, Item #92584977, and one in a third

10 color, Item #96627506).

11   82. On the paper receipt that Ms. Lisner received at the cash register and which

12 Ms. Lisner viewed, Aeropostale stated that the sale price of each Cami was "$4.00," and that

13 Ms. Lisner was enjoying a "Discount" of "($2.50)" from the regular price. These

14 representations on the receipt further indicated to Ms. Lisner that each Cami had a value of and

15 was normally and regularly sold by Aeropostale for $6.50, and that the $4.00 sale price she

16 paid was a bargain price after Aeropostale applied a "Discount" that resulted in a monetary

17 savings of "($2.50)."

18   83. However, the $6.50 reference price printed on Aeropostale's price tag and the

19 advertised discount of $2.50 were false and deceptive. In reality, and unbeknownst to

20 Ms. Lisner, Aeropostale had never offered the Cami at the purported regular price of $6.50 in

21 its stores.

22   84. **Online Purchase of Shelf Cami**. Ms. Lisner has also made purchases of

23 purportedly discounted products from Aeropostale's website.

24   85. On October 5, 2020, Ms. Lisner visited the Aeropostale website to shop for

25 clothing items. Ms. Lisner viewed and ultimately purchased several items from the website that

26 day. For example, Ms. Lisner viewed webpages advertising a shelf camisole ("Shelf Cami").

27   86. On the product webpage for the Shelf Cami, Ms. Lisner viewed several

28 representations, including a reference price and a sale price for the Shelf Cami. Ms. Lisner

CLASS ACTION COMPLAINT

- 23 -

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

1    viewed a strike-through reference price of "$10.50." Directly below the reference price, Ms.

2    Lisner viewed the sale price of $4.40.

3          87.     Relying on Aeropostale's representations, Ms. Lisner reasonably believed that

4    the Shelf Cami was normally offered for sale and sold by Aeropostale for the $10.50 reference

5    price. Ms. Lisner reasonably believed that the Shelf Cami was thereby worth and had a value of

6    $10.50. Ms. Lisner reasonably believed that the advertised "sale" price of $4.40—a purported

7    monetary discount of $6.10—represented a special bargain.

8          88.     Relying on Aeropostale's representations, Ms. Lisner purchased two Shelf

9    Camis (Item #022918350).

10         89.     However, the advertised regular price and discount for the Shelf Camis were

11   false and deceptive because, unbeknownst to Ms. Lisner, Aeropostale had never offered the

12   Shelf Camis at their advertised regular price of $10.50.

13         90.     The products purchased by Ms. Lisner from Aeropostale were not in fact worth

14   the advertised regular prices that Aeropostale had led Ms. Lisner to believe. Contrary to

15   Aeropostale's representations, Ms. Lisner did not enjoy the advertised and promised savings for

16   the products that she purchased.

17         91.     Aeropostale's advertised false reference prices and advertised false discounts

18   were material misrepresentations and inducements to Ms. Lisner's purchases.

19         92.     As a direct and proximate result of Aeropostale's acts and omissions, Ms. Lisner

20   was harmed, suffered an injury-in-fact, and lost money or property.

21         93.     Ms. Lisner reasonably relied on Aeropostale's material misrepresentations.  If

22   Ms. Lisner had known the truth, she would not have purchased the Camis or Shelf Camis or

23   any of the other products she purchased from Aeropostale at the prices she paid. Ms. Lisner did

24   not enjoy the actual discounts Aeropostale represented and promised to her. The products were

25   not in fact worth the inflated amounts that Aeropostale represented to her. Additionally,

26   Aeropostale's false advertising scheme fraudulently increased demand for Aeropostale's

27   products, thereby shifting the demand curve and enabling Aeropostale to charge Ms. Lisner

28   more for its products than Aeropostale otherwise could have charged.

CLASS ACTION COMPLAINT

- 24 -

1     94.    Ms. Lisner has a legal right to rely now, and in the future, on the truthfulness

2     and accuracy of Aeropostale's representations regarding its advertised reference prices and

3     discounts.

4     95.    Ms. Lisner has been a regular shopper at Aeropostale, and would shop there

5     again if she could have confidence regarding the truth of Aeropostale's prices and the value of

6     its products.

7     96.    Ms. Lisner will be harmed if, in the future, she is left to guess as to whether

8     Aeropostale is providing a legitimate sale or not, and whether products are actually worth the

9     amount that Aeropostale is representing.

10    97.    If Ms. Lisner were to purchase again from Aeropostale without Aeropostale

11    having changed its unlawful and deceptive conduct alleged herein, Ms. Lisner would be

12    harmed on an ongoing basis and would be harmed once or more in the future.

13    **B.    Plaintiff Jennifer Quiroz Nunez**

14    98.    Plaintiff Jennifer Quiroz Nunez is, and at all relevant times has been, a

15    California resident and citizen.

16    99.    Ms. Nunez has been a regular shopper at Aeropostale for many years. She has

17    made numerous purchases of purportedly discounted products in Aeropostale's brick-and-

18    mortar stores in California.

19    100.   For example, on March 29, 2021, Ms. Nunez visited an Aeropostale store

20    located in the Visalia Mall in Visalia, California 93277.

21    101.   While at the store, Ms. Nunez saw prominent signs that advertised significant

22    sales and percentage-off discounts on merchandise throughout the store.

23    102.   Ms. Nunez viewed signage adjacent to several pairs of denim shorts that

24    advertised that the shorts were "BUY 1 GET 1 FREE." Ms. Nunez viewed the price tags

25    attached to two pairs of denim shorts, which each showed a price of $59.95.

26    103.   Relying on Aeropostale's representations, Ms. Nunez reasonably believed that

27    the denim shorts were normally offered for sale and sold by Aeropostale for the $59.95 tagged

28    price. Ms. Nunez reasonably believed that the denim shorts were thereby worth and had a value

CLASS ACTION COMPLAINT

- 25 -

1    of $59.95, the price set forth on the price tag by Aeropostale. Ms. Nunez reasonably believed

2    that the advertised "BUY 1 GET 1 FREE" offer—a purported monetary discount of $59.95 for

3    purchasing two pairs of denim shorts—represented a special bargain.

4         104.    Relying on Aeropostale's representations, Ms. Nunez purchased one pair of

5    denim shorts for $59.95 (Item #93390793) and received a second pair of denim shorts,

6    purportedly for "free" (Item #93412967).

7         105.    On the paper receipt that Ms. Nunez received at the cash register and which

8    Ms. Nunez viewed, Aeropostale made additional product pricing and value representations

9    regarding the pairs of denim shorts. Aeropostale printed on the receipt that the regular price for

10   each pair of denim shorts was "$59.95," and that the second pair of denim shorts was "100.0%

11   Off" the regular price of $59.95, comprising a monetary discount of "($59.95)." These

12   representations on the receipt further indicated to Ms. Nunez that each pair of denim shorts had

13   a value of and was normally and regularly sold by Aeropostale for $59.95, and that the "free"

14   pair of denim shorts she received after paying the full regular price for the first pair of denim

15   shorts was a bargain price after Aeropostale applied a special "BUY 1 GET 1 FREE" discount

16   that resulted in a monetary savings of "($59.95)."

17        106.    However, the $59.95 reference price printed on Aeropostale's price tag and

18   receipt, the advertised discount of "BUY 1 GET 1 FREE," and the $59.95 in claimed monetary

19   savings were false and deceptive. In reality, and unbeknownst to Ms. Nunez, Aeropostale had

20   never offered either pair of denim shorts in its stores at the purported regular price of $59.95.

21   The denim shorts were not in fact worth the $59.95 price that Aeropostale had led her to

22   believe. Each pair of denim shorts had nearly always been advertised with a "BUY 1 GET 1

23   FREE" offer or with a "50% OFF" discount from the $59.95 purported regular price. Contrary

24   to Aeropostale's representations, Ms. Nunez did not enjoy the advertised and promised savings

25   of $59.95 for the "free" pair of denim shorts.

26        107.    Aeropostale's advertised false reference prices and advertised false free offer

27   were material misrepresentations and inducements to Ms. Nunez's purchase.

28        108.    As a direct and proximate result of Aeropostale's acts and omissions, Ms. Nunez

CLASS ACTION COMPLAINT

- 26 -

1    was harmed, suffered an injury-in-fact, and lost money or property.

2         109.    Ms. Nunez reasonably relied on Aeropostale's material misrepresentations. If

3    Ms. Nunez had known the truth, she would not have purchased the pairs of denim shorts from

4    Aeropostale at the price she paid. Ms. Nunez did not enjoy the actual discount Aeropostale

5    represented and promised to her. The pairs of denim shorts were not in fact worth the inflated

6    amount that Aeropostale represented to her. In fact, the pairs of denim shorts did not normally

7    sell for, and were not actually worth, the fictitious and invented list price that Aeropostale

8    printed on its price tag and on the receipt. Additionally, Aeropostale's false advertising scheme

9    fraudulently increased demand for Aeropostale's products including the denim shorts, thereby

10   shifting the demand curve and enabling Aeropostale to charge Ms. Nunez more for the pairs of

11   denim shorts than Aeropostale otherwise could have charged.

12        110.    Ms. Nunez has a legal right to rely now, and in the future, on the truthfulness

13   and accuracy of Aeropostale's representations regarding its advertised reference prices and

14   discounts.

15        111.    Ms. Nunez has been a regular shopper at Aeropostale, and would shop there

16   again if she could have confidence regarding the truth of Aeropostale's prices and the value of

17   its products.

18        112.    Ms. Nunez will be harmed if, in the future, she is left to guess as to whether

19   Aeropostale is providing a legitimate sale or not, and whether products are actually worth the

20   amount that Aeropostale is representing.

21        113.    If Ms. Nunez were to purchase again from Aeropostale without Aeropostale

22   having changed its unlawful and deceptive conduct alleged herein, Ms. Nunez would be

23   harmed on an ongoing basis and would be harmed once or more in the future.

24   **C.    Plaintiff James Andrews**

25        114.    Plaintiff James Andrews is, and at all relevant times has been, a California

26   resident and citizen.

27        115.    Mr. Andrews has been a regular shopper at Aeropostale for many years. He has

28   made numerous purchases of purportedly discounted products in Aeropostale's brick-and-

CLASS ACTION COMPLAINT

- 27 -

1    mortar stores in California.

2         116.    For example, on November 7, 2019, Mr. Andrews visited an Aeropostale store

3    located in the Moreno Valley Mall in Moreno Valley, California 92553.

4         117.    Prior to entering the store, Mr. Andrews saw a large sign hanging in the window

5    by the storefront entrance advertising "Up to 70% OFF" all items in the store. While at the

6    store, Mr. Andrews saw prominent signs that advertised significant sales and percentage-off

7    discounts on merchandise throughout the store.

8         118.    Mr. Andrews viewed signage adjacent to a black knit hat ("Hat") which

9    advertised that the Hat was on sale for "60% OFF." Mr. Andrews also viewed the price tag

10    attached to the Hat, which showed a price of $19.50.

11         119.    Relying on Aeropostale's representations, Mr. Andrews reasonably believed that

12    the Hat was normally offered for sale and sold by Aeropostale for the $19.50 tagged price. Mr.

13    Andrews reasonably believed that the Hat was thereby worth and had a value of $19.50, the

14    price set forth on the price tag by Aeropostale. Mr. Andrews reasonably believed that the

15    advertised discount of "60% OFF"—which resulted in a purported "sale" price of $7.80 and a

16    purported monetary discount of $11.70—represented a special bargain.

17         120.    Relying on Aeropostale's representations, Mr. Andrews purchased the Hat

18    (Item #92652883).

19         121.    On the paper receipt that Mr. Andrews received at the cash register and which

20    Mr. Andrews viewed, Aeropostale made additional product pricing and value representations

21    regarding the Hat. Aeropostale printed on the receipt that the sale price of the Hat was "$7.80,"

22    and that Mr. Andrews was enjoying a "PROMO" of "60% OFF" the regular price of "$19.50"

23    and a monetary discount of "($11.70)." These representations on the receipt further indicated

24    to Mr. Andrews that the Hat had a value of and was normally and regularly sold by Aeropostale

25    for $19.50, and that the lower $7.80 price he paid was a bargain price after Aeropostale applied

26    a special "60% OFF" "PROMO" discount that resulted in a monetary savings of "($11.70)."

27         122.    However, the $19.50 reference price printed on Aeropostale's price tag and

28    receipt and the advertised discounts of "60% OFF" and $11.70 in monetary savings were false

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1   and deceptive.  In reality, and unbeknownst to Mr. Andrews, Aeropostale had never offered the

2   Hat at the purported regular price of $19.50 in its stores.

3         123.   Aeropostale's advertised false reference prices and advertised false discounts

4   were material misrepresentations and inducements to Mr. Andrews' purchase.

5         124.   As a direct and proximate result of Aeropostale's acts and omissions, Mr.

6   Andrews was harmed, suffered an injury-in-fact, and lost money or property.

7         125.   Mr. Andrews reasonably relied on Aeropostale's material misrepresentations.  If

8   Mr. Andrews had known the truth, he would not have purchased the Hat from Aeropostale at

9   the price he paid. Mr. Andrews did not enjoy the discount Aeropostale represented and

10   promised to him. The Hat was not in fact worth the inflated amount that Aeropostale

11   represented to him. In fact, the Hat did not normally sell for, and was not actually worth, the

12   fictitious and invented list price that Aeropostale printed on its price tag and on the receipt.

13   Additionally, Aeropostale's false advertising scheme fraudulently increased demand for

14   Aeropostale's products including the Hat, thereby shifting the demand curve and enabling

15   Aeropostale to charge Mr. Andrews more for the Hat than Aeropostale otherwise could have

16   charged.

17         126.   Mr. Andrews has a legal right to rely now, and in the future, on the truthfulness

18   and accuracy of Aeropostale's representations regarding its advertised reference prices and

19   discounts.

20         127.   Mr. Andrews has been a regular shopper at Aeropostale, and would shop there

21   again if he could have confidence regarding the truth of Aeropostale's prices and the value of

22   its products.

23         128.   Mr. Andrews will be harmed if, in the future, he is left to guess as to whether

24   Aeropostale is providing a legitimate sale or not, and whether products are actually worth the

25   amount that Aeropostale is representing.

26         129.   If Mr. Andrews were to purchase again from Aeropostale without Aeropostale

27   having changed its unlawful and deceptive conduct alleged herein, Mr. Andrews would be

28   harmed on an ongoing basis and would be harmed once or more in the future.

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    VIII.  <u>CLASS ACTION ALLEGATIONS</u>

2        130.    Plaintiffs bring this class-action lawsuit on behalf of themselves and the

3    members of the following class (the "Class"):

4            **All citizens of the State of California who, within the applicable**
             **limitations period, purchased from an Aeropostale store located in**
5            **California or from the Aeropostale website one or more products**
             **which was advertised or promoted by displaying or disseminating a**
6            **reference price or discount or a "Buy 1 Get 1 Free" or "Buy 1 Get**
             **2 Free" offer.**
7

8        131.    All claims and the Class definition are limited to claims which have not been

9    discharged in bankruptcy.

10       132.    Specifically excluded from the Class are the Defendants, any entity in which a

11   Defendant has a controlling interest or which has a controlling interest in a Defendant, each

12   Defendant's agents and employees and attorneys, the bench officers to whom this civil action is

13   assigned, and the members of each bench officer's staff and immediate family.

14       133.    *Numerosity.* Plaintiffs do not know the exact number of Class members but is

15   informed and believe that the Class easily comprises tens of thousands of individuals. As such,

16   Class members are so numerous that joinder of all members is impracticable.

17       134.    *Commonality and Predominance.* Well-defined, nearly identical legal or factual

18   questions affect the members of the Class. These questions predominate over questions that

19   might affect individual Class members. These common questions include, but are not limited

20   to, the following:

21            a.    Aeropostale's policies and actions regarding its advertising;

22            b.    The accuracy of Aeropostale's advertised reference prices and discounts;

23            c.    The accuracy of Aeropostale's advertised free offers such as "Buy 1 Get

24   1 Free" and "Buy 1 Get 2 Free";

25            d.    Whether the alleged conduct of Aeropostale violates California Civil

26   Code § 1750 *et seq.*, California Business & Professions Code § 17500 *et seq.*, and California

27   Business & Professions Code § 17200 *et seq.*;

28            e.    Whether Plaintiffs and the Class have suffered injury and have lost

CLASS ACTION COMPLAINT

- 30 -

1    money or property as a result of such false or misleading discounts and reference prices;

2              f.      Whether Defendants should be ordered to disgorge their unjust

3    enrichment; and

4              g.      Whether Aeropostale should be enjoined from further engaging in the

5    misconduct alleged herein.

6         135.    The prosecution of separate actions by individual members of the Class would

7    create a risk of inconsistent or varying adjudications with respect to individual members of the

8    Class which would establish incompatible standards of conduct for the party opposing the

9    Class.

10        136.    The party opposing the Class has acted or refused to act on grounds generally

11   applicable to the Class, thereby making appropriate final injunctive relief with respect to the

12   Class as a whole.

13        137.    *Typicality.* Plaintiffs' claims are typical of Class members' claims. Plaintiffs and

14   Class members all sustained injury as a result of Defendants' practices and schemes.

15        138.    *Adequacy.* Plaintiffs will fairly and adequately protect Class members' interests.

16   Plaintiffs have no interests antagonistic to Class members' interests. Plaintiffs have retained

17   counsel who have considerable experience and success in prosecuting complex class action and

18   consumer protection cases.

19        139.    Further, a class action is superior to all other available methods for fairly and

20   efficiently adjudicating this controversy. Each Class member's interests are small compared to

21   the burden and expense required to litigate each of their claims individually, so it would be

22   impractical and would not make economic sense for Class members to seek individual redress

23   for Aeropostale's conduct. Individual litigation would add administrative burden on the courts,

24   increasing the delay and expense to all parties and to the court system. Individual litigation

25   would also create the potential for inconsistent or contradictory judgments regarding the same

26   uniform conduct. A single adjudication would create economies of scale and comprehensive

27   supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in

28   managing a class action trial.

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    140.    By its conduct and omissions alleged herein, Aeropostale has acted and refused

2    to act on grounds that apply generally to the Class, such that final injunctive relief and

3    declaratory relief is appropriate respecting the Class as a whole.

4                              **CAUSES OF ACTION**

5                                    **COUNT I**
                         **Violation of the Consumers Legal Remedies Act**
6                            **California Civil Code § 1750 *et seq.***

7    141.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

8    hereinbefore.

9    142.    Plaintiffs bring this claim in their individual capacities, as private attorneys

10   general seeking the imposition of public injunctive relief, and as representatives of a putative

11   class.

12   143.    Each of Defendants Aero OpCo LLC, SPARC Group LLC, Aero Operations

13   LLC, and each Doe defendant is a "person," as defined by California Civil Code § 1761(c).

14   144.    Plaintiffs Janette Lisner, Jennifer Quiroz Nunez, and James Andrews are each a

15   "consumer," as defined by California Civil Code § 1761(d).

16   145.    The Aeropostale products purchased by each Plaintiff from Aeropostale are

17   "goods" as defined by California Civil Code § 1761(a).

18   146.    Plaintiffs' purchases from Aeropostale each constitutes a "transaction," as

19   defined by California Civil Code § 1761(e).

20   147.    The unlawful methods, acts or practices alleged herein to have been undertaken

21   by Aeropostale were all committed intentionally. The unlawful methods, acts or practices

22   alleged herein to have been undertaken by Aeropostale did not result from a bona fide error

23   notwithstanding the use of reasonable procedures adopted to avoid such error.

24   148.    With regard to this count of the pleading which alleges one or more violations of

25   the CLRA, venue is proper in the Los Angeles County Superior Court because, without

26   limitation, the County of Los Angeles is the county in which at least one transaction which is

27   the subject of this Complaint occurred. A declaration establishing that this Court has proper

28   venue for this count is attached hereto as **Exhibit A.**

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1       149.   Aeropostale's methods, acts and practices, including Aeropostale's

2  misrepresentations, active concealment, and failures to disclose, violated and continue to

3  violate the CLRA in ways including, but not limited to, the following:

4          a.   Aeropostale misrepresented that its products had characteristics, benefits,

5  or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

6          b.   Aeropostale advertised its products with an intent not to sell them as

7  advertised (Cal. Civ. Code § 1770(a)(9));

8          c.   Aeropostale made false or misleading statements of fact concerning

9  reasons for, existence of, or amounts of, price reductions. (Cal. Civ. Code § 1770(a)(13)); and

10         d.   Aeropostale represented that its products were supplied in accordance

11  with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

12       150.   With respect to omissions, Aeropostale at all relevant times had a duty to

13  disclose the information in question because, inter alia: (a) Aeropostale had exclusive

14  knowledge of material information that was not known to Plaintiffs and the Class;

15  (b) Aeropostale concealed material information from Plaintiffs and the Class; and

16  (c) Aeropostale made partial representations which were false and misleading absent the

17  omitted information.

18       151.   Aeropostale's misrepresentations and nondisclosures deceive and have a

19  tendency to deceive the general public.

20       152.   Aeropostale's misrepresentations and nondisclosures are material, in that a

21  reasonable person would attach importance to the information and would be induced to act on

22  the information in making purchase decisions.

23       153.   As a direct and proximate result of these violations, Plaintiffs and the Class were

24  harmed, suffered injury-in-fact, and lost money.

25       154.   First, Plaintiffs and the Class were harmed because they would not have

26  purchased the items at the prices they paid had they known the items had not been regularly

27  offered at the higher list price.

28       155.   Second, Plaintiffs and the Class were harmed because they did not enjoy the

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    actual discounts Aeropostale represented and promised to them.

2       156.    Third, Plaintiffs and the Class were harmed because the items they purchased

3    were not in fact worth the inflated amount that Aeropostale represented to them. In fact, the

4    items did not normally sell for, and were not actually worth, the fictitious and invented list

5    price that Aeropostale printed on its price tags and listed on its website.

6       157.    Fourth, Plaintiffs and the Class were harmed because they were victims of

7    Aeropostale's fraud on the market. Aeropostale's false advertising scheme fraudulently

8    increased demand for Aeropostale's products, thereby shifting the demand curve and enabling

9    Defendants to charge their customers more than they otherwise could have charged.

10   Aeropostale's fraud on the market enabled Aeropostale to charge everyone more for all of its

11   products, by artificially stimulating demand based on false pretenses and fraud. But for the

12   false advertising scheme, Aeropostale would have had to charge less money for its products in

13   order to enjoy the same level of demand for its products.

14      158.    Aeropostale's conduct alleged herein caused substantial injury to Plaintiffs, the

15   Class, and the public. Aeropostale's conduct is ongoing and is likely to continue and recur

16   absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Aeropostale

17   from committing such practices. Plaintiffs also seek attorneys' fees and costs.

18      159.    Plaintiffs individually seek public injunctive relief, under the CLRA, to protect

19   the general public from Aeropostale's false discount advertising and omissions.

20      160.    In accordance with California Civil Code § 1782(a), on April 29, 2021,

21   Plaintiffs' counsel, on behalf of Plaintiff James Andrews, served Aeropostale with notice of its

22   CLRA violations by certified mail, return receipt requested.  On June 2, 2021, Plaintiffs'

23   counsel, on behalf of Plaintiffs Janette Lisner and Jennifer Quiroz Nunez, likewise served

24   Aeropostale with notice of its CLRA violations by certified mail, return receipt requested.

25      161.    If Aeropostale fails to provide appropriate relief for its CLRA violations within

26   30 days of its receipt of Plaintiffs' June 2, 2021 notification letter, Plaintiffs will amend this

27   complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§

28   1780 and 1782(b), along with attorneys' fees and costs.

**COUNT II**
**Violation of California's False Advertising Law**
**California Business and Professions Code § 17500 *et seq.***

162.  Plaintiffs reallege and incorporates by reference all paragraphs alleged hereinbefore.

163.  Plaintiffs bring this claim in their individual capacities, as private attorneys general seeking the imposition of public injunctive relief, and as representatives of a putative class.

164.  Aeropostale has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

165.  Aeropostale has advertised reference prices and corresponding discounts that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See, e.g., Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal.App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (same).

166.  Aeropostale, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes, disseminates, has made or disseminated, causes to be made or disseminated, and has caused to be made or disseminated, before the public in the State of California and throughout the United States, in any newspaper or other publication, or any advertising device, or by public outcry or by proclamation, or in any other manner or means, including over the Internet, statements concerning that personal property or those services, and concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which are untrue or misleading and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading.

167.  Independently, Aeropostale has made or disseminated or caused to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that

HATTIS & LUKACS
400 108ᵗʰ Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    personal property or those services, professional or otherwise, so advertised at the price stated

2    therein, or as so advertised.

3         168.    With respect to omissions, Aeropostale at all relevant times had a duty to

4    disclose the information in question because, inter alia: (a) Aeropostale had exclusive

5    knowledge of material information that was not known to Plaintiffs and the Class;

6    (b) Aeropostale concealed material information from Plaintiffs and the Class; and

7    (c) Aeropostale made partial representations which were false and misleading absent the

8    omitted information.

9         169.    Aeropostale committed such violations of the False Advertising Law with actual

10   knowledge that its advertising was untrue or misleading, or Aeropostale, in the exercise of

11   reasonable care, should have known that its advertising was untrue or misleading.

12        170.    Plaintiffs and the Class reasonably relied on Aeropostale's representations and

13   omissions made in violation of the False Advertising Law.

14        171.    As a direct and proximate result of these violations, Plaintiffs and the Class were

15   harmed, suffered injury-in-fact, and lost money.

16        172.    First, Plaintiffs and the Class were harmed because they would not have

17   purchased the items at the prices they paid had they known the items had not been regularly

18   offered at the higher list price.

19        173.    Second, Plaintiffs and the Class were harmed because they did not enjoy the

20   actual discounts Aeropostale represented and promised to them.

21        174.    Third, Plaintiffs and the Class were harmed because the items they purchased

22   were not in fact worth the inflated amount that Aeropostale represented to them. In fact, the

23   items did not normally sell for, and were not actually worth, the fictitious and invented list

24   price that Aeropostale printed on its price tags and listed on its website.

25        175.    Fourth, Plaintiffs and the Class were harmed because they were victims of

26   Aeropostale's fraud on the market. Aeropostale's false advertising scheme fraudulently

27   increased demand for Aeropostale's products, thereby shifting the demand curve and enabling

28   Defendants to charge their customers more than they otherwise could have charged.

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

1    Aeropostale's fraud on the market enabled Aeropostale to charge everyone more for all of its

2    products, by artificially stimulating demand based on false pretenses and fraud.  But for the

3    false advertising scheme, Aeropostale would have had to charge less money for its products in

4    order to enjoy the same level of demand for its products.

5         176.    Aeropostale should be ordered to disgorge or make restitution of all monies

6    improperly accepted, received or retained.

7         177.    Aeropostale's conduct has caused substantial injury to Plaintiffs, the Class, and

8    the public. Aeropostale's conduct is ongoing and is likely to continue and recur absent a

9    permanent injunction. Accordingly, Plaintiffs seek an order enjoining Aeropostale from

10   committing such violations of the FAL. Plaintiffs further seeks an order granting restitution to

11   Plaintiffs and the Class in an amount to be proven at trial. Plaintiffs further seek an award of

12   attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

13        178.    Absent injunctive relief, Aeropostale will continue to injure Plaintiffs and the

14   Class. Aeropostale's misrepresentations and omissions are ongoing. Even if such conduct were

15   to cease, it is behavior that is capable of repetition or reoccurrence by Aeropostale.

16        179.    Plaintiffs individually seek public injunctive relief, under the FAL, to protect the

17   general public from Aeropostale's false discount price advertising and omissions.

18                                        **COUNT III**
                          **Violation of California's Unfair Competition Law**
19                  **California Business and Professions Code § 17200 _et seq._**

20        180.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

21   hereinbefore.

22        181.    Plaintiffs bring this claim in their individual capacities, as private attorneys

23   general seeking the imposition of public injunctive relief, and as representatives of a putative

24   class.

25        182.    Defendant Aeropostale's acts and omissions alleged herein constitute unfair

26   competition and unlawful, unfair, or fraudulent business practices in violation of California

27   Business and Professions Code § 17200 _et seq._ (the "Unfair Competition Law" or "UCL").

28        183.    Aeropostale's conduct and omissions alleged herein are immoral, unethical,

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1   oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiffs and the

2   Class. There is no utility to Aeropostale's conduct, and even if there were any utility, it would

3   be significantly outweighed by the gravity of the harm to consumers caused by Aeropostale's

4   conduct alleged herein.

5          184.    Aeropostale's conduct and omissions alleged herein also violate California

6   public policy, including as such policy is reflected in Cal. Civ. Code § 1750 *et seq.* and Cal.

7   Civ. Code §§ 1709-1710.

8          185.    By its conduct and omissions alleged herein, Aeropostale has violated the

9   "unlawful" prong of the UCL, including by making material misrepresentations and omissions

10  in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* and Cal. Civ. Code § 1750, *et seq.*;

11  engaging in deceit in violation of Cal Civ. Code §§ 1709-1710; and employing deceptive

12  discount price advertisements as identified by 16 C.F.R § 233.1 *et seq.* and 16 C.F.R. § 251.1.

13         186.    Aeropostale has violated the "fraudulent" prong of the UCL by advertising its

14  products with a false and inflated reference price, with a false discount, and with a false "free"

15  offer.

16         187.    With respect to omissions, Aeropostale at all relevant times had a duty to

17  disclose the information in question because, inter alia: (a) Aeropostale had exclusive

18  knowledge of material information that was not known to Plaintiffs and the Class;

19  (b) Aeropostale concealed material information from Plaintiffs and the Class; and

20  (c) Aeropostale made partial representations which were false and misleading absent the

21  omitted information.

22         188.    Aeropostale's material misrepresentations and nondisclosures were likely to

23  mislead reasonable consumers, existing and potential customers, and the general public.

24         189.    Aeropostale's misrepresentations and nondisclosures deceive and have a

25  tendency to deceive the general public and reasonable consumers.

26         190.    Aeropostale's misrepresentations and nondisclosures are material, such that a

27  reasonable person would attach importance to the information and would be induced to act on

28  the information in making purchase decisions.

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1     191.    Plaintiffs and the Class reasonably relied on Aeropostale's representations and

2    omissions made in violation of the UCL.

3     192.    As a direct and proximate result of these violations, Plaintiffs and the Class were

4    harmed, suffered injury-in-fact, and lost money.

5     193.    First, Plaintiffs and the Class were harmed because they would not have

6    purchased the items at the prices they paid had they known the items had not been regularly

7    offered at the higher list price.

8     194.    Second, Plaintiffs and the Class were harmed because they did not enjoy the

9    actual discounts Aeropostale represented and promised to them.

10     195.    Third, Plaintiffs and the Class were harmed because the items they purchased

11    were not in fact worth the inflated amount that Aeropostale represented to them. In fact, the

12    items did not normally sell for, and were not actually worth, the fictitious and invented list

13    price that Aeropostale printed on its price tags and listed on its website.

14     196.    Fourth, Plaintiffs and the Class were harmed because they were victims of

15    Aeropostale's fraud on the market. Aeropostale's false advertising scheme fraudulently

16    increased demand for Aeropostale's products, thereby shifting the demand curve and enabling

17    Defendants to charge their customers more than they otherwise could have charged.

18    Aeropostale's fraud on the market enabled Aeropostale to charge everyone more for all of its

19    products, by artificially stimulating demand based on false pretenses and fraud. But for the

20    false advertising scheme, Aeropostale would have had to charge less money for its products in

21    order to enjoy the same level of demand for its products.

22     197.    By its conduct and omissions alleged herein, Aeropostale received more money

23    from Plaintiffs and the Class than it should have received, and that money is subject to

24    restitution.

25     198.    Aeropostale's conduct has caused substantial injury to Plaintiffs, Class

26    members, and the public. Aeropostale's conduct is ongoing and is likely to continue and recur

27    absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Aeropostale

28    from committing such unlawful, unfair, and fraudulent business practices. Plaintiffs further

CLASS ACTION COMPLAINT

HATTIS & LUKACS
400 108th Avenue, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171

1    seek an order granting restitution to Plaintiffs and the Class in an amount to be proven at trial.

2    Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. §

3    1021.5.

4         199.    Absent injunctive relief, Aeropostale will continue to injure Plaintiffs and the

5    Class. Aeropostale's misrepresentations and omissions are ongoing. Even if such conduct were

6    to cease, it is behavior that is capable of repetition or reoccurrence by Aeropostale.

7         200.    Plaintiffs individually seek public injunctive relief, under the UCL, to protect

8    the general public from Aeropostale's false discount advertising and omissions.

9                                **PRAYER FOR RELIEF**

10        A.    In order to prevent injury to the general public, Plaintiffs Janette Lisner, Jennifer

11   Quiroz Nunez, and James Andrews each individually request that the Court enter a public

12   injunction enjoining Defendants from advertising false reference prices, false discounts, and

13   false "free" offers.

14        B.    Further, on behalf of themselves and the proposed Class, Plaintiffs request that

15   the Court order relief and enter judgment against Defendants as follows:

16             1.    Declare this action to be a proper class action, certify the Class, and

17   appoint Plaintiffs and their counsel to represent the Class;

18             2.    Order disgorgement or restitution, including, without limitation,

19   disgorgement of all revenues, profits and unjust enrichment that each Defendant obtained,

20   directly or indirectly, from Plaintiffs and the members of the Class or otherwise as a result of

21   the unlawful conduct alleged herein;

22             3.    Permanently enjoin each Defendant from the unlawful conduct alleged

23   herein;

24             4.    Retain jurisdiction to police each Defendant's compliance with the

25   permanent injunctive relief;

26             5.    Order each Defendant to pay attorneys' fees, costs, and pre-judgment

27   and post-judgment interest to the extent allowed by law; and

28             6.    Provide all other relief to which Plaintiffs and the Class may show

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
400 108th Avenue, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171

1    themselves justly entitled.

2                              **JURY DEMAND**

3        Plaintiffs Janette Lisner, Jennifer Quiroz Nunez, and James Andrews, on behalf of

4    themselves and on behalf of the Class, demand a trial by jury on all issues so triable.

5

6        DATED this 3rd day of June, 2021.

7                                    Presented by:

8                                    HATTIS & LUKACS

9                                    By: [signature]

10
                                     Daniel M. Hattis (SBN 232141)
11                                   Paul Karl Lukacs (SBN 197007)
                                     HATTIS & LUKACS
12                                   400 108th Avenue NE, Suite 500
                                     Bellevue, WA 98004
13                                   Telephone: (425) 233-8650
                                     Facsimile: (425) 412-7171
14                                   Email: dan@hattislaw.com
                                     Email: pkl@hattislaw.com
15
                                     Stephen P. DeNittis, Esq.*
16                                   Shane T. Prince, Esq.*
                                     DENITTIS OSEFCHEN PRINCE, P.C.
17                                   5 Greentree Centre, Suite 410
                                     525 Route 73 N.
18                                   Marlton, New Jersey 08057
                                     Telephone: (856) 797-9951
19                                   Facsimile: (856) 797-9978
                                     Email: sdenittis@denittislaw.com
20                                   Email: sprince@denittislaw.com

21                                   *Attorneys for Plaintiffs and the Proposed Class*

22                                   *Pro hac vice application to be submitted.*

23

24

25

26

27

28

CLASS ACTION COMPLAINT
                                    - 41 -

# EXHIBIT A

1 | Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
2 | HATTIS & LUKACS
400 108th Avenue NE, Suite 500
3 | Bellevue, WA 98004
Telephone: (425) 233-8650
4 | Facsimile: (425) 412-7171
Email: dan@hattislaw.com
5 | Email: pkl@hattislaw.com

6 | Stephen P. DeNittis, Esq. (Pro Hac Vice to be submitted)
Shane T. Prince, Esq. (Pro Hac Vice to be submitted)
7 | DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
8 | 525 Route 73 N.
Marlton, New Jersey 08057
9 | Telephone: (856) 797-9951
Facsimile: (856) 797-9978
10 | Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com
11

12 | *Attorneys for Plaintiffs and the Proposed Class*

13

14 |                SUPERIOR COURT OF THE STATE OF CALIFORNIA

15 |                        COUNTY OF LOS ANGELES

16 |                             UNLIMITED CIVIL

17 | JANETTE LISNER,                        | Case No. _____
18 | JENNIFER QUIROZ NUNEZ, and
JAMES ANDREWS,                         | **DECLARATION OF JANETTE LISNER**
19 | for Themselves, as Private Attorneys  | **PURSUANT TO THE CALIFORNIA**
General, and On Behalf Of All          | **CONSUMERS LEGAL REMEDIES ACT**
20 | Others Similarly Situated,            | **(CAL. CIVIL CODE § 1780(d))**

21 | Plaintiffs,

22 | v.                                     | **[FILED CONCURRENTLY**
**WITH COMPLAINT]**
23

24 | AERO OPCO LLC;
SPARC GROUP LLC;
25 | AERO OPERATIONS LLC;
and DOES 1-5, inclusive,
26

27 | Defendants.

28

---

CLRA DECLARATION

1    I, JANETTE LISNER, hereby declare and state as follows:

2    1.    I am over the age of 18 years, and am one of the plaintiffs in the above-

3    referenced civil action.

4    2.    The facts contained herein are based on my personal knowledge except as to

5    facts stated upon information and belief and, as to those, I believe it to be true.

6    2.    This civil action pleads a cause of action for violation of the California

7    Consumers Legal Remedies Act ("CLRA") against Defendants Aero Opco LLC, SPARC

8    Group LLC, and Aero Operations LLC (collectively "Defendants" or "Aeropostale"). This civil

9    action has been commenced in a county described in Section 1780(d) of the California Civil

10   Code as a proper place for the trial of the action.

11   3.    This action is being commenced in the County of Los Angeles because that is a

12   county in which each of the Defendants is doing business. Each of the Defendants is doing

13   business in the County of Los Angeles by, without limitation, advertising and selling its goods

14   and services through its brick-and-mortal retail stores located in the County of Los Angeles,

15   including the Aeropostale store located in the Northridge Fashion Center in Northridge,

16   California, and by advertising and selling its goods through its website (www.aeropostale.com)

17   to consumers located in the County of Los Angeles.

18   4.    This action is being commenced in the County of Los Angeles because at least

19   one of the transactions that is the subject of the Complaint took place in the County of Los

20   Angeles, at the Aeropostale store located in the Northridge Fashion Center in Northridge,

21   California 91324.

22   I declare under penalty of perjury under the laws of the State of California that the

23   foregoing is true and correct.

24   Executed in Los Angeles County, California.

25

26   Date: May 28, 2021

27   _____
     Janette Lisner (May 28, 2021 14:54 PDT)
     JANETTE LISNER

28

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel M. Hattis, Esq. (SBN 232141)<br>HATTIS & LUKACS<br>400 108th Ave NE, Ste 500<br>Bellevue, WA 98004<br>TELEPHONE NO.: (425) 233-8650   FAX NO.: (425) 412-7171<br>ATTORNEY FOR *(Name):* Janette Lisner, Jennifer Quiroz Nunez, James Andrews | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Lisner, et al. v. Aero OpCo LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[ ] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* (1) CLRA; (2) False Advertising Law; (3) UCL
5. This case [✓] is  [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 5/28/2021

Daniel M. Hattis, Esq., Counsel for Plaintiffs
_____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

| SHORT TITLE: Lisner, et al. v. Aero OpCo LLC et al. | CASE NUMBER **21ST CV20847** |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

BY FAX

| LASC CIV 109 Rev. 12/18<br>For Mandatory Use | **CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION** | Local Rule 2.3<br>Page 1 of 4 |
|---|---|---|

| SHORT TITLE: Lisner, et al. v. Aero OpCo LLC et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Lisner, et al. v. Aero OpCo LLC et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Lisner, et al. v. Aero OpCo LLC et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: |
|---|---|

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: _5/28/2021_____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**06/03/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ S. Drew _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV20847 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Maren Nelson | 17 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 06/07/2021
   (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By S. Drew _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

**abtl**

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:      FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the  complaint, and _____ for the cross-
           (INSERT DATE)                                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR PLAINTIFF)
Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR DEFENDANT)
Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR DEFENDANT)
Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR DEFENDANT)
Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR _____)
Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR _____)
Date:

_____              ➢  _____
           (TYPE OR PRINT NAME)                                          (ATTORNEY FOR _____)

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally.  Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a.  The party requesting the Informal Discovery Conference will:

        i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii.  Include a brief summary of the dispute and specify the relief requested; and

        iii.  Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b.  Any Answer to a Request for Informal Discovery Conference must:

        i.   Also be filed on the approved form (copy attached);

        ii.  Include a brief summary of why the requested relief should be denied;

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**    FAX NO. (Optional):<br>**E-MAIL ADDRESS (Optional):**<br>**ATTORNEY FOR (Name):** | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | **CASE NUMBER:** |
|---|---|

1. This document relates to:

    ☐   Request for Informal Discovery Conference
    ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                     FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER



**Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

**3. Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

**4. Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**