UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTE LISNER, JENNIFER QUIROZ NUNEZ, and JAMES ANDREWS, for themselves, as Private Attorneys General, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPARC GROUP LLC; and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. 2:21-CV-05713-AB (GJSx)<br><br>**ORDER GRANTING WITH LEAVE TO AMEND DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Before the Court is Defendant Sparc Group LLC's ("Defendant") Motion to Dismiss the First Amended Complaint ("Motion"). (Dkt. No. 24.) Plaintiffs Janette Lisner, Jennifer Quiroza Nunez, and James Andrews (collectively "Plaintiffs") filed an opposition ("Opp'n"). (Dkt. No. 28.) Defendant filed a reply ("Reply"). (Dkt. No. 30.) The Court heard oral argument regarding Defendant's Motion on October 8, 2021. For the reasons stated below, the Court **GRANTS** Defendant's Motion.

## I.   BACKGROUND

On June 3, 2021, Plaintiffs filed their initial complaint in state court against Defendant. (Dkt. No. 1, Ex. A.)

1.

On July 14, 2021, Defendant removed the matter to this Court. (Dkt. No. 1.)

On August 4, 2021, Plaintiffs filed their First Amended Complaint, the operative complaint, against Defendant. (Dkt. No. 16 ("FAC").)

Plaintiffs assert the following three causes of action against Defendant: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*; (2) violation of False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*; and (3) violation of Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. (*See generally* FAC.) Plaintiffs seek restitution and injunctive relief under their second and third causes of action, and injunctive relief and damages under their first cause of action. (*See generally* FAC.) Per the operative complaint, Defendant "manages the retail and website operations of the Aéropostale brand." (FAC at ¶ 12.) Aéropostale is an "American retailer of casual apparel and accessories, principally directed to young adults through its Aéropostale stores." (Motion at 1:25-27.)

Plaintiffs bring these causes of action on behalf of themselves and "[a]ll citizens of the State of California who . . . purchased from an Aéropostale store located in California or from the Aéropostale website one or more products which [were] advertised or promoted by displaying or disseminating a discount." (*Id*. at ¶ 133.) Plaintiffs also seek to represent two sub-classes of customers who made in-store and online purchases, respectively. (*Id*. at ¶¶ 134, 135.) Plaintiffs assert that Aéropostale perpetrates a nationwide "massive false discount advertising scheme across nearly all of its Aéropostale-branded products and sales channels" (*i.e.*, in Aéropostale's retail stores, factory/outlet stores, and on the Aéropostale website). (*Id*. at ¶ 2.) According to Plaintiffs, "Aéropostale perpetrates this illegal scheme in order to induce consumers to purchase its products and to increase the amount it can charge for its products." (*Id*. at ¶ 27.)

Plaintiffs' allegations in the FAC are based upon the seven-year investigation conducted by Plaintiffs' counsel into Aéropostale's pricing practices. Specifically,

"Plaintiffs' counsel has been monitoring and scraping the Aéropostale website on an automated daily basis with a proprietary software program since November 5, 2014." (*Id*. at ¶ 56.) Plaintiffs' counsel has compiled a "database of daily prices and time-stamped screenshots" for "nearly all of the products" offered on [the] Aéropostale website, which consists of "over 39,000 products." (*Id*.)

Plaintiffs' counsel also allege to have investigated Aéropostale's brick-and-mortar retail stores and that "Aéropostale's false discount practices and product pricing are substantially the same both online and in-store" since "[v]irtually all products that Aéropostale offers in its brick-and-mortar retail stores are also available and are advertised on the Aéropostale website." (*Id*. at ¶ 57.) Based on Plaintiffs' counsel's investigation of the Aéropostale retail stores, Plaintiffs further allege that the retail stores are "substantially identical and are for all intents and purposes the same" as Aéropostale's factory stores. (*Id*. at ¶ 64.) In the FAC, Plaintiffs include several photographs taken at retail stores and screenshots from the Aéropostale website demonstrating the alleged advertising scheme. (*Id*. at ¶¶ 38, 41, 43, 50, 52, 58, 60 .) During oral argument, Plaintiffs' counsel confirmed that their investigation of Aéropostale's retail stores was limited to retail stores located in New Jersey and Washington. Besides the named Plaintiffs' purchases detailed below, Plaintiffs' counsel has not conducted any investigation into the Aéropostale retail stores or factory stores located in California.

As to the named Plaintiffs, the FAC alleges that all three Plaintiffs purchased "purportedly discounted products" either at Aéropostale retail stores in California or the Aéropostale website and would not have purchased these items if they had been aware of the alleged deceptive advertising scheme. (*Id*. at ¶¶ 74-98.) Specifically, in 2020, Plaintiff Lisner purchased two Shelf Camis on the Aéropostale website and five Camis at an Aéropostale retail store located in Northridge, California. (*Id*.) Similarly, in March 2021, Plaintiff Nunoz purchased one pair of denim shorts and received a second pair of denim shorts, purportedly for "free," at an Aéropostale retail store in

Visalia, California. (*Id*. at ¶¶ 99-115.) In November 2019, Plaintiff Andrews purchased a hat from an Aéropostale retail store located in Moreno Valley, California. (*Id*. at ¶¶ 116-132.) During oral argument, Plaintiffs' counsel confirmed that none of the named Plaintiffs made any purchases at any Aéropostale factory store in California. Plaintiffs assert that they "would shop [at Aéropostale] again if [they] could have confidence regarding the truth of Aéropostale's prices and value of its products." (*Id*. at ¶¶ 97, 113, 130.)

## II. LEGAL STANDARD

### a. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id*. The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations

contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside of the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

### b. Motion to Dismiss Under Rule 9(b)

Claims sounding in fraud, such as the UCL, FAL, and CLRA claims asserted by Plaintiffs here, are subject to the heightened pleading requirements of Rule 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy this heightened standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotations marks omitted). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

5.

2003) (citation omitted). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted). "When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint...." *Vess*, 317 F.3d at 1107. A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### c. Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).

Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

6.

## III. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). Judicial notice permits a court to consider an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2); *see* Fed. R. Evid. 201(b), advisory committee's note ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy."). The Ninth Circuit has made clear that "[a] court must also consider—and identify—which fact or facts it is noticing from . . . [a document]. Simply because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, Defendant seeks judicial notice of three documents they contend are relevant to its Motion and Reply. Specifically, Defendant seeks judicial notice of court documents, including complaints and orders, filed in other matters involving similar allegations. (Dkt. Nos. 23, 31.) Plaintiffs do not object to the introduction of these Exhibits. (Dkt. No. 29.) Similarly, Plaintiffs seek judicial notice of four court documents they contend are relevant to their Opposition. (*Id.*) Defendant does not object to the introduction of these Exhibits.

Both Plaintiffs and Defendant's exhibits are judicially noticeable as matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). Accordingly, these exhibits are accepted for what they represent, but the Court is not bound by any specific fact findings and legal conclusions set forth in them.

///

## IV. DISCUSSION

### a. Relaxed Pleading Standard

Plaintiffs assert that they are not required to allege the details of their pre-filing investigation, and to the extent they are required to do so, the Court should apply a "relaxed" pleading standard on the theory that Aéropostale's pricing information is "uniquely within Aéropostale's possession." (*See* Opp'n at 12:4-15:25.) As an initial matter, the Ninth Circuit has yet to definitively address the level of factual detail necessary pursuant to Rule 9(b) to sufficiently plead fraud claims under the UCL, FAL, and CLRA. *Compare Sperling v. DSWC, Inc.*, 699 F. App'x 654, 655 (9th Cir. 2017) (affirming dismissal of a complaint that lacked a specifically alleged investigation), *with Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017) (holding that fictitious pricing allegations based on information and belief are sufficient). Since *Rubenstein* and *Sperling*, district courts have reached different conclusions and outcomes regarding whether plaintiffs must allege a pre-suit investigation and/or the level of factual detail required in cases alleging deceptive pricing practices.[1]

---

[1] *Compare Stathakos v. Columbia Sportswear Co.*, Case No. 15cv4543 YGR, 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016) ("plaintiffs are not required to plead that they had conducted a pre-suit investigation – or include the results of such investigations – in every case, particularly where the information is not within the personal knowledge of the pleader."); *Safransky v. Fossil Grp., Inc.*, Case No. 17cv1865 MMA (NLS), 2018 WL 1726620, at *12 (S.D. Cal. Apr. 9, 2018) (same), *with Jacobo v. Ross Stores, Inc.*, No. CV-15-04701-MWF-AGR, 2016 WL 3482041, at *3 (C.D. Cal. Feb. 23, 2016) ("Plaintiffs must conduct a reasonable investigation into their claims and plead at least some facts to bolster their 'belief' that the 'Compare At' prices were inaccurate."); *Chase v. Hobby Lobby Stores, Inc.*, No. 17-CV-00881-GPC-BLM, 2017 WL 4358146, at *4 (S.D. Cal. Oct. 2, 2017) (dismissing the complaint pursuant to Rule 9(b) despite the complaint describing the investigation conducted by plaintiff's counsel, which "catalogued the pricing practices at three Hobby Lobby retail stores in San Diego County (Chula Vista, La Mesa, and San Marcos) and provided a chart detailing some of those findings including the item, price, % off, dates of discounting, and stores observed.").
.

While Plaintiffs are not expected to plead the full extent of Aéropostale's pricing practices, the Court will not apply a relaxed Rule 9(b) standard when the FAC demonstrates that not all information regarding Aéropostale's pricing practices is held exclusively by Defendant. (*See* FAC at ¶¶ 56-68.) Indeed, Plaintiffs' opposition is premised upon the notion that their investigation into Aéropostale's retail stores and website is extensive and sufficient to demonstrate a nationwide fraud scheme. (*See* Opp'n at 8:10-9:28.) Plaintiffs cannot use their allegations regarding Aéropostale's pricing practices as both a sword and a shield.

### b. Investigation into Items Purchased by Named Plaintiffs

Defendant asserts the FAC fails to "allege sufficient facts to show with particularity how [and] why" the reference prices on the items Plaintiffs purchased were false or deceptive. Specifically, the FAC does not allege that the investigation conducted by Plaintiffs' counsel includes any of the items purchased by the named Plaintiffs. (Motion at 5:14-16.) In addition, Defendant asserts that even if Plaintiffs investigated the online pricing for the items purchased, their claims would still fail because Plaintiffs failed to investigate Aéropostale's in-store pricing at its retail stores in California for these items. (Motion at 8:21-23.)

In response, Plaintiffs assert that because the investigation determined that "more than 39,000 products were never or rarely offered at the list price" this "strongly supports the plausible inference that the products purchased by Plaintiffs were subject to the same false discounting practices." (Opp'n 10:2-10.) Plaintiffs also confirmed during oral argument that they have the pricing data for the items purchased by Plaintiffs. The Court agrees with Defendant.

Although Plaintiffs are not required to allege "the full daily detailed pricing histories" of the products purchased, Plaintiffs do have to allege sufficient information to assure that the fraud allegations in the FAC are supported. For example, in *Fisher*, in the initial complaint, plaintiff alleged that defendant engaged "in a fraudulent pricing scheme by falsely advertising 'almost all' of its outlet store merchandise."

*Fisher v. Eddie Bauer LLC*, No. 19CV857 JM (WVG), 2020 WL 4218228, at *2 (S.D. Cal. Feb. 3, 2020). However, "the only facts supporting this allegation were that [plaintiff's] counsel conducted an investigation in which he cataloged the prices of the two items [plaintiff] purchased." *Id.* As such, the court granted defendant's motion to dismiss the initial complaint, except with respect to the two items plaintiff purchased, but allowed plaintiff to leave to amend. *Id.* Subsequently, plaintiff filed an amended complaint that cured several of the deficiencies, such as cataloguing the prices for several items, including the items plaintiff purchased, and including photographs showing "what appeared to be most, if not all, merchandise at [one of the outlet stores]." *Id.* at *3.

Similarly, in *Dennis*, the court held plaintiff's initial complaint was insufficient when it alleged that plaintiff's counsel investigated "various retail stores" and "various consumer goods," but the only store specifically identified in the complaint was the outlet store from which the plaintiff made a purchase. *Dennis v. Ralph Lauren Corp.*, No. 16cv1056-WQH-BGS, 2016 WL 7387356, at *4 (S.D. Cal. Dec. 20, 2016). The court subsequently held that plaintiff's amended complaint was sufficient because it specified that the investigation included all four stores in the county, as well as two other stores, that sold the defendant's products. *See Dennis v. Ralph Lauren Corp.*, No. 16CV1056-WQH-BGS, 2017 WL 3732103, at *4-5 (S.D. Cal. Aug. 29, 2017). The court also noted that the complaint included "a chart detailing the particular items that were included in the investigation, the particular stores where those items were offered for sale, the advertised 'Our Price' price for each item, the advertised discount for each item, and the dates on which the prices were recorded and verified." *Id.* at *4.

Here, the FAC is comparable to the initial complaints in *Fisher* and *Dennis*. For example, like in *Fisher*, despite alleging a nationwide "massive false discount advertising scheme across nearly all of Aéropostale-branded products and sales channels," the FAC identifies only three specific items (*i.e.*, Long Sleeve Seriously

Soft Crew Tee, Max Stretch Air Athletic Skinny Jean, A87 Solid Logo Pique Polo) demonstrating the alleged advertising scheme. (FAC at ¶¶ 2, 43, 50, 58.) Notably, unlike in the initial complaint in *Fisher*, none of the three items identified in the FAC are items purchased by Plaintiffs. Indeed, the FAC does not identify any pricing information for any of the items purchased by Plaintiffs (*i.e.*, Shelf Camis, Camis, denim shorts, and a hat). (*See generally* FAC.)

Moreover, here, unlike in *Dennis*, the retail stores identified in the FAC, which Plaintiffs' counsel confirmed are located in Washington and New Jersey during oral argument, are not stores from which any of the Plaintiffs made purchases. Indeed, as confirmed during oral argument, Plaintiffs' counsel has not investigated any Aéropostale retail stores located in California. Plaintiffs' failure to allege the pricing information for the items Plaintiffs purchased in the FAC and/or investigate at the Aéropostale retail stores located in California is fatal to their claims that Aéropostale perpetrates a nationwide false discount advertising scheme for nearly all of its products offered across all of its sale channels.

In contrast to Plaintiff's assertions, the FAC does not plead an equivalent level of factual detail as the amended complaints in *Fisher* or *Dennis*. The specific facts pled by Plaintiffs regarding the items they purchased at Aéropostale's retail stores in California and the Aéropostale website are insufficient to support their broader allegation of a nationwide fraudulent pricing scheme involving almost all of Aéropostale's merchandise across all of its sale channels. Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's UCL, FAL, and CLRA claims as they relate to the Aéropostale website and retail stores.

c. **Investigation into Aéropostale Factory Stores**

In order to assert a claim under the UCL or FAL, a person must have "suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§ 17204, 17535. Actual reliance is required to have standing to sue under the UCL or FAL. *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th

11.

310, 326–27 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."). In addition, actual reliance is required to have standing to sue under the CLRA. *See Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 973 (2009).

      Defendant asserts that Plaintiffs lack standing to bring claims against Aéropostale's factory stores because "they or their counsel [do not claim to have] ever set foot in an Aéropostale [f]actory store," and thus, have not alleged any injury. (Motion at 10:18-24.) In response, Plaintiffs assert that because Aéropostale implements a nationwide scheme, Defendant's "focus on its factory stores is irrelevant," and "as alleged in the First Amended Complaint, there is no difference between the mainline stores and factory stores with regard to the false advertising scheme." (Opp'n at 17:27-18:1.) However, Plaintiffs do not dispute that they have not set foot in an Aéropostale factory store.

      Plaintiffs cites to *Azimpour*, in support of their proposition that there is no difference between Aéropostale's factory stores and retail stores. However, Plaintiffs' reliance on *Azimpour* is misplaced as it supports Defendant's position that Plaintiffs lack of standing to bring claims against Aéropostale's factory stores. *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017). In *Azimpour*, plaintiff filed a lawsuit against defendant for employing "a scheme to defraud consumers by advertising merchandise at fabricated 'sale' prices," and relied upon an investigation by his counsel, which revealed that the "pillow Plaintiff purchased remained continuously on 'sale' at every Sears store in San Diego County for the same price" throughout the relevant time period. *Id.* at *1. However, the court held that plaintiff lacked standing to "incorporate other media platforms into [their] case," because plaintiff failed "to adequately plead reliance on

online or print advertisements, among possible others, for standing purposes." *Id.* at *4.

Likewise, in *Ferrero*, the defendant argued that "neither of the named plaintiffs alleged that [they] visited the website, and, therefore, neither plaintiff actually relied on statements from the website before purchasing Nutella®." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011). In response, the plaintiffs in *Ferrero* asserted that "they did not have to visit the website because the representations on the website were part of [defendant's] overall advertising campaign." *Id.* at 1112. The court held that based on the allegations in the operative complaint, plaintiffs "did not actually rely on the statements on Nutella®'s website before making their purchases" and thus, "lack[ed] standing to challenge these statements under the UCL, FAL, and CLRA." *Id.* Several other districts courts have similarly held that plaintiffs lack standing when they do not rely on statements made through a specific sales channel. *See e.g.*, *McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB OPX, 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013) ("Plaintiff alleges that the Elations website contains various misrepresentations . . . but the SAC does not allege that he looked at or relied on anything on Defendant's website before purchasing Elations. Thus, Plaintiff did not actually rely on any website statements and does not have standing to bring claims based on those statements."); *Reed v. NBTY, Inc.*, No. EDCV 13-0142 JGB OPX, 2014 WL 12284044, at *7 (C.D. Cal. Nov. 18, 2014) ("It is undisputed that neither [plaintiff] viewed the labels of NitroPump or NOS Pump or visited Defendants' websites prior to purchasing the Products. Accordingly, the named plaintiffs do not have standing to pursue claims on the basis of representations made on the labels or on Defendants' websites"); *Branca v. Nordstrom, Inc.*, No. 14-CV-2062-MMA JMA, 2015 WL 1841231, at *4 (S.D. Cal. Mar. 20, 2015) ("However, to the extent Plaintiff's claims arise from Nordstrom's website or from the Nordstrom Rack name itself, the Court finds Plaintiff has not sufficiently alleged economic injury or actual reliance for the purpose of standing."); *Johns v. Bayer Corp.*, No. 09-CV-

13.

1935-DMS JMA, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) ("[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon. The statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations.").

Here, as in *Azimpour* and *Ferrero*, none of the Plaintiffs made any purchase from an Aéropostale factory store. Indeed, during oral argument, Plaintiffs' counsel confirmed that their investigation does not include any Aéropostale factory stores and they not even physically gone to any Aéropostale factory stores. Because Plaintiffs did not actually rely on representations or statements Aéropostale made at its factory stores before making their purchases, the Court finds that Plaintiffs lack standing and the Court thus lacks jurisdiction over their claims as to Aéropostale's factory stores. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's UCL, FAL, and CLRA claims as they relate to Aéropostale factory stores.

### d. Equitable Relief Claims

Plaintiffs seek injunctive relief and restitution under the UCL and FAL, and seek injunctive relief and damages under the CLRA. (*See generally* FAC and Prayer for Relief.) Defendant argues that Plaintiffs' conclusory allegation that they "'lack an adequate remedy at law to prevent Aéropostale's continued misrepresentations' (FAC ¶ 168) [fail because they are] insufficient to explain why damages would not make them whole." (Motion at 13:4-6.)

Defendant's argument is premised on the recent Ninth Circuit case *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), which Defendant asserts is "the most recent [case] in a long line of decisions articulating the well-established principle that 'equitable relief is not appropriate where an adequate remedy exists at law.'" *See also Phillips v. Ford Motor Co.*, 726 F. App'x 608 (9th Cir. 2018). In *Sonner*, the Ninth Circuit held that as a matter of federal, not state, law, a plaintiff may not seek equitable relief unless they have alleged that they lack an adequate remedy at

14.

law. *Sonner*, 971 F.3d at 843-844.  Plaintiffs respond that *Sonner* does not apply at the pleading stage, and that Plaintiffs have plead a specific, non-monetary harm: "the right to rely on future advertising representations by the [D]efendant." (Opp'n at 19:13-14.)[2]  The Court has considered *Sonner*, both parties' arguments, and numerous district court orders applying *Sonner*, and is persuaded that Plaintiffs' claims for injunctive relief and restitution must be dismissed.

      First, it is of no moment that *Sonner* was decided at a much later state in the ligation (on the eve of trial), because "[n]othing in *Sonner* limits its precedential value to such circumstances." *Zaback v. Kellogg Sales Co.*, No. 20-00268 BEN MSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (collecting cases that have "applied *Sonner* to dismiss complaints in cases involving similar claims at the more familiar early stages of litigation"). While Plaintiffs cite to several district courts that have found it premature to apply *Sonner's* reasoning at the pleading stage, the majority of district courts have held that *Sonner's* reasoning applies at the pleading stage. *Compare Rothman v. Equinox Holdings, Inc.*, No. 22-CV-09760-CAS (MRWX), 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021) (finding it "premature at [the motion to dismiss] stage of the litigation to determine whether plaintiff's alleged injuries have an adequate remedy at law.") (internal citations omitted); *Dahlin v. Under Armour, Inc.*, No. CV 20-3706 PA (JEMX), 2020 WL 6647733, at *4 (C.D. Cal. July 31, 2020) ("Although Plaintiff may face significant hurdles obtaining restitution as a remedy . . . the Court is unable, at this stage, to conclude that Plaintiff has an adequate remedy at law.") (internal citations omitted); *Harris v. McDonald's Corp.*, No. 20-CV-06533-RS, 2021 WL 2172833, at *3 (N.D. Cal. Mar. 24, 2021) ("McDonald's argument that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th

---

[2] The Court's decision not to address Plaintiffs' policy arguments should not be taken to mean the Court did not consider that argument; rather, it should be taken to mean the Court *rejected* that argument. *See Roy v. City of Los Angeles*, 2018 WL 3439168, *4 (C.D. Cal. July 11, 2018).

15.

Cir. 2020) requires rejection of the equitable claims at the pleading stage is not persuasive."), *with Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV-20-00769-CJC (GJSX), 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (dismissing UCL claims for an injunction and restitution because *Sonner* "very recently made clear" that the requirement that plaintiff establish an inadequate remedy at law "applies to claims for equitable relief under both the UCL and CLRA"); *Teresa Adams v. Cole Haan, LLC*, No. SA CV-20913-JVS (DFMX), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) ("The *Sonner* court derived its rule from broader principles of federal common law ... this broad analysis of the distinction between law and equity [does not] create an exception for injunctions as opposed to other forms of equitable relief. The clear rule in *Sonner* that plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief therefore applies."); *Schertz v. Ford Motor Co.*, No. CV-20-03221-TJH-PVCX, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020) (dismissing claims for an injunction and restitution under the UCL because plaintiff failed to allege the lack of an adequate legal remedy as required under *Sonner*); *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (dismissing claims for injunctive relief based on *Sonner*); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *7 (N.D. Cal. Nov. 6, 2020) (holding that the legal remedy of damages was inadequate because it would not be possible to quantify the actual damages for future harm which arose from defendant's "misrepresenting the accuracy of its ad targeting and failing to disclose true accuracy rates of its targeting categories."); *Julian v. TTE Tech., Inc.*, No. 20-CV-02857-EMC, 2020 WL 6743912, at *5 (N.D. Cal. Nov. 17, 2020) (dismissing where "on the face of the complaint, it appears that what Plaintiffs' claim for damages and restitution are not really different"). Indeed, the dispositive question here "is whether Plaintiffs have adequately pled their claims for equitable relief, and that question is not premature on a motion to dismiss." *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020).

  Second, besides conclusory statements, Plaintiffs do not plead or explain why the remedies at law requested would be inadequate. *See Julian*, 2020 WL 6743912, at *4 (noting "it is not an unfair burden to require Plaintiffs to explain *why* legal remedies are inadequate in their pleading.") Nowhere in the FAC do Plaintiffs plead any difficulty in quantifying the damages that arise from the allegedly deceptive pricing practice or otherwise distinguish their request for equitable relief from their request for damages. Although Plaintiffs argue in their Opposition that the reliance on future advertising is an abstract future harm and makes it impossible to calculate damages, the Court cannot consider facts that are not alleged in the operative complaint. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations included in opposition to motion to dismiss irrelevant to question of whether plaintiffs stated a claim).

  Accordingly, under *Sonner*, Plaintiffs must establish that they lack an adequate remedy at law to seek restitution, which they fail to do here. The Motion is therefore **GRANTED** as to Plaintiffs' claims and requests for equitable relief.

## V. CONCLUSION

  For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**. Because leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), the Court **GRANTS** Plaintiffs leave to amend their FAC to attempt to cure the deficiencies discussed herein. Any such amended complaint must be filed within twenty-one (21) days of the issuance of this Order.

  **IT IS SO ORDERED.**

Dated: December 29, 2021    _____
              HONORABLE ANDRÉ BIROTTE JR.
              UNITED STATES DISTRICT COURT JUDGE

17.